## HALL–BAKER GRAIN CO. v. UNITED STATES.

### (Circuit Court of Appeals, Eighth Circuit.   August 19, 1912.)

### No. 3,694.

#### *(Syllabus by the Court.)*

1. FOOD (§ 2*)—STATUTES—CONSTRUCTION.

The purpose of the Pure Food Act of June 30. 1906. c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), was (1) to protect purchasers from injurious deceits by the sale of inferior for superior articles, and (2) to protect the health of the people from the sale of normally wholesome articles to which have been added substances poisonous or detrimental to health.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. FOOD (§ 14*)—"ADULTERATION"—"MISBRANDING"—STATUTORY PROVISIONS.

The H. Company, at Kansas City. Mo., on April 3, 1909, contracted to sell to the W. Company at Ft. Worth, Tex., 5,000 bushels of No. 2 red wheat, according to the Missouri official state grades. On April 29, 1909, the H. Company ordered the operator of a public elevator where it stored its grain to ship to the W. Company in fulfillment of this contract No. 2 red wheat. The operator loaded and sent to the W. Company a car of wheat. After this wheat was loaded, the official inspector of the state of Missouri at Kansas City inspected, adjudged, and certified this wheat to be No. 2 red wheat. An invoice of it was forwarded to the W. Company dated May 3, 1909, showing that it was shipped under the contract of April 3, 1909, and subject to Kansas City weights and grades. The wheat arrived in Texas without change. The Texas inspector, the federal inspector, and other witnesses there found it to be, and it was, wheat of another and less valuable grade. None of the officers or employés of the H. Company had any knowledge of this fact, or anything to do with the grading or shipping, except to order the operator of the public elevator to ship No. 2 red wheat.

*Held*, the H. Company was not guilty of misbranding or of adulterating within the meaning of sections 7 and 8 of the Pure Food Act (Act June 30, 1906, c. 3915, 34 Stat. 768, 769 [U. S. Comp. St. Supp. 1909, pp. 1190, 1191]).

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 10–13; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 1, pp. 210–212.

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

In Error to the District Court of the United States for the Western District of Missouri.

The Hall-Baker Grain Company was convicted of misbranding a car load of mixed wheat and of adulterating it by mixing with inferior wheat, and brings error. Reversed and remanded for new trial.

Edwin C. Meservey, Frank Hagerman, and Henry A. Bundschu, (Haff, Meservey, German & Michaels, of counsel), for plaintiff in error.

Leslie J. Lyons, U. S. Atty. (Thad. B. Landon, Asst. U. S. Atty., on the brief), for the United States.

Before SANBORN and HOOK, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SANBORN, Circuit Judge. The defendant below, the Hall-Baker Grain Company, a corporation, engaged in the purchase and sale of grain at Kansas City, Mo., was convicted of misbranding a car load of mixed wheat, No. 2 red wheat, and of adulterating the same by mixing other inferior wheat with it, in violation of the Pure Food Act of June 30, 1906, 34 Stat. 768, sections 7 and 8, U. S. Comp. Stat. Supp. 1909, pp. 1191, 1192. It attacks the judgment against it on many grounds, one of which is that there was no substantial evidence of the charges against it and the court below refused to instruct the jury, as it requested, to return a verdict in its favor.

The defendant was found guilty of misbranding under the second, and adulteration under the fourth, count of the indictment. The second count was based on these provisions of section 8 of the act:

"That for the purposes of this act an article shall also be deemed to be misbranded, * * * in the case of foods, first, if it be an imitation of, or offered for sale under, a distinctive name of another article; second, if it be labeled or branded so as to deceive or mislead the purchaser."

And the second count charged that the mixed wheat was offered for sale by the defendant as No. 2 red wheat, and that it was labeled No. 2 red wheat, when it was in fact mixed wheat, so as to deceive and mislead the purchasers thereof.

The fourth count was founded on this declaration of section 7 of the act:

"That for the purposes of this act an article shall be deemed to be adulterated in the case of food, first, if any substance has been mixed and packed with it so as to reduce, or lower, or injuriously affect its quality or strength; second, if any substance has been substituted in whole or in part for the article; third, if any valuable constituent of the article has been wholly or in part abstracted; fourth, if it be mixed, colored, powdered, coated or stained in a manner whereby damage or inferiority is concealed."

And the fourth count charged that each of these things had been done to the car load of wheat. There was evidence tending to establish these facts: Kansas City, Mo., was a grain market. There was a public elevator capable of containing 1,000,000 bushels of wheat, operated by a corporation which had no interest in this transaction, which classified wheat purchased by the defendant and other dealers according to its quality and grade as it came to it and was inspected by the official Missouri inspectors and stored it in its various bins, so that wheat of the same grades or qualities went into the same bins and those of different grades and qualities into different bins. On receipt of orders from the owners of this wheat to ship out wheat of any grade, the elevator company loaded it out of the bin containing that grade of wheat into a car, that car load of wheat was then inspected by an official inspector of the state of Missouri and certified to be of the grade and character which he found and adjudged it to be. There were rules for this inspection that had been established pursuant to laws of the state of Missouri and the inspection was made by officers of the state. One of these rules was that No. 2 red wheat was "to be sound, well cleaned, dry, red winter wheat, weighing not less than 59 pounds to the measured bushel."

On April 3, 1909, the defendant agreed to sell 5,000 bushels of No. 2 red wheat according to Missouri state inspection and Kansas City weights to the Walker Grain Company at Ft. Worth, Tex. On April 29, 1909, the elevator company, pursuant to an order from the defendant, loaded into a car 45,000 pounds of wheat which an official inspector of the state of Missouri inspected, adjudged and certified to be No. 2 red wheat, and caused this car load of wheat to be forwarded to the Walker Grain Company in Texas. No officer or employé of the defendant ever saw this load of wheat, or had anything to do with its shipment, except to order the elevator company to ship a car load of No. 2 red wheat. There was an invoice of this wheat dated May 3, 1909, which stated that the Walker Grain Company bought of the defendant on April 3, 1909, this and another car load of "2 red wheat. * * * K. C. Wts. and Grades." No. 2 red wheat is a soft wheat, containing not over 5 per cent. of hard wheat, and soft wheat which contains from 20 per cent. to 45 per cent. of hard wheat is No. 2 or No. 3 mixed wheat, or some other grade of wheat, and the mixture of such a percentage of hard wheat with No. 2 red wheat depreciates its value in the Southwestern markets. This wheat was delivered to the consignee in Texas in the same condition that it was when inspected in Kansas City. When this load of wheat arrived in Texas, it was inspected by a Texas inspector, a federal inspector and others, who found it to contain from 20 per cent. to 45 per cent. of hard wheat. They differed in their estimates of the percentage of hard wheat in it and in the grade of mixed wheat to which it belonged, but agreed that it was not No. 2 red wheat. It is impracticable to keep the crops of wheat of different farms separate in the transportation of and traffic in this article from the purchaser to the consumer, and it is generally bought and sold by official or established grades, according to the inspection of specified officers or persons. Such officers or persons sometimes differ in their judgments of the grades to which specific lots belong. Wheat generally contains some hard wheat and some soft wheat. Some wheat is very hard and some very soft. There are many degrees of hardness and of softness of wheat which pass imperceptibly into each other, and there is no fixed and clear line of demarcation whereby all wheat may be indubitably separated into hard wheat and soft wheat. No other facts were disclosed at the trial which are material to the question before us.

[1] The act for the violation of which the defendant was convicted is entitled "An act for preventing the manufacture, sale or transportation of adulterated, or misbranded, or poisonous, or deleterious foods, drugs, medicine and liquors." This title and the act itself, when carefully read and considered, demonstrate the fact that the sole purpose of its enactment was (1) to protect purchasers from injurious deceits by the sale of inferior for superior articles; and (2) to protect the health of the people by preventing the sale of normally wholesome articles to which have been added substances poisonous or detrimental to health. The clauses of the act

under which the defendant was convicted were evidently enacted to prevent the injurious deceit of purchasers. But where in the facts that were proved and that have been recited is there any evidence of any intent to accomplish deceit, or of any violation of the provisions of this law?

[2] The first charge was that the car load of wheat was offered for sale under a distinctive name of another article of food, to wit, No. 2 red wheat, when it was in fact mixed wheat. The proof was that the defendant offered to sell and sold 5,000 bushels, not of No. 2 red wheat, but of such wheat as under the laws of Missouri the official inspector of that state at Kansas City should decide and certify to be No. 2 red wheat, that it delivered the load of wheat in question pursuant to that contract and that this load of wheat was such wheat as under the laws of Missouri the official inspector of that state at Kansas City did adjudge and certify to be No. 2 red wheat. Concede that the inspector was mistaken, and that the wheat was in fact mixed wheat. Nevertheless it was the wheat which the Missouri inspector adjudged and certified to be No. 2 red wheat, and the wheat that he should so adjudge and certify and no other, whatever its actual grade, was the article the defendant offered to sell and sold. It was the undoubted right of the parties to this sale to make the Missouri official inspector the arbiter between them of the character and grade of the wheat in which they dealt, and to make his decision and inspection an ineradicable term of its description. That they did, when they agreed that the wheat sold should be No. 2 red wheat according to the Missouri inspection, and, as the defendant offered and sold no other, there was no evidence in this case that he offered one article under the distinctive name of another.

The second charge was that the wheat was labeled and marked No. 2 red wheat when it was in fact mixed wheat, so as to deceive and mislead the purchasers thereof. But there was no evidence that it was ever labeled or marked at all. The government offered the invoice of the wheat in evidence, over the objection of the defendant, to prove a label, but this invoice contained a provision similar to that in the contract of sale to the effect that the wheat was to be governed by the Missouri grades, and the wheat had been already inspected and graded No. 2 red wheat by the official inspector several days before the invoice was issued. There was no evidence of any false labeling to deceive purchasers here.

The fourth count of the indictment charged (a) that other grades of wheat had been mixed with the wheat shipped so as to injuriously affect it; (b) that other grades of wheat had been substituted in part for the No. 2 red wheat pretended to be sold; (c) that a part of the No. 2 red wheat had been abstracted and a like quantity of of wheat of inferior grade substituted; and (d) that the wheat was mixed and packed with other grades of wheat whereby damage and inferiority was concealed. But, as has already appeared, the proof was conclusive that the wheat sold and delivered was the identical article offered for sale, to wit, that wheat which under the laws of Missouri the official inspector of that state should and did adjudge

and certify to be No. 2 red wheat. There was no evidence that any other grade of wheat was ever mixed with that wheat or substituted in part for it, or mixed or packed with it, or that any part of it had been abstracted. The proof was that on the order of the defendant the operator of the public elevator loaded it into the car, the official inspector tested it, adjudged and certified it to be No. 2 red wheat, it was hauled without mixing, abstraction, or substitution, to the consignee in Texas, where other inspectors found it to be mixed wheat, and there the evidence on this subject ceases. There was no evidence to sustain the conviction of this defendant on either count of this indictment.

The act of Congress was not enacted to catch and punish merchants who are conducting their business by customary and approved methods with no intent to deceive purchasers, or to injure the public health, for the mistakes of third persons over whom they have no control, nor for trivial errors of their own, which at first blush may seem to bring their action within the inhibition of the law, but by which in reality they violate neither its letter nor its spirit. Many other questions of law arose at the trial, and were discussed by counsel at the bar. But the conclusion which has been reached renders it unnecessary to consider them, and because there was no evidence to sustain any of the charges in this indictment the judgment below must be reversed and the case must be remanded to the court below for a new trial; and it is so ordered.