UNITED STATES v. THIRTY CASES PURPORTING TO BE GRENADINE SYRUP.

(District Court, D. Massachusetts. August 22, 1912.)

No. 650.

FOOD (§ 15*)—ADULTERATION—MISBRANDING—"GRENADINE SYRUP"—"GRENA-DINE."

Claimant shipped in interstate commerce a compound labeled "Grenadine Syrup," composed of sugar, citric and tartaric acid, and the juices of certain fruits. *Held* that, since the word "grenadine" in its common acceptation does not mean a syrup made from pomegranates, but the term "grenadine syrup" is used in commerce to designate, not a syrup so made, but a syrup possessing a certain characteristic flavor and color, a purchaser of syrup so labeled was not entitled to expect to receive a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

syrup actually made from pomegranates, and that the syrup libeled was therefore not subject to forfeiture because of adulteration or misbranding.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. § 15.* What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

Libel by the United States for condemnation of 30 cases purporting to be grenadine syrup. Dismissed.

E. Mark Sullivan, Asst. U. S. Atty., of Boston, Mass.

Arthur L. Strasser, of New York City, Whipple, Sears & Ogden, of Boston, Mass., and Levi Cooke, of Washington, D. C., for claimant.

DODGE, District Judge. The 30 cases were transported from New York to Boston for delivery to a consignee. The consignee has filed a waiver of its rights in favor of the shipper. The shipper has appeared as claimant and answered the information.

The bottles contained in the cases seized are labeled "Grenadine Syrup."

The first count of the information charges that the liquor in the bottles is adulterated within the meaning of the Food and Drugs Act of June 30, 1906, in that a compound sugar syrup has been substituted wholly or in part for the food named. The second count charges misbranding within the meaning of said act, in that the label would deceive and mislead the purchaser into the belief that the food consisted of grenadine syrup, where as in truth and in fact it was not grenadine syrup. The claimant denies that there has been any adulteration within the meaning of the act, and, denying also that there has been any misbranding within the meaning of the act, expressly says and avers "that said food was in truth and in fact 'Grenadine Syrup.'"

The government's contention is that "Grenadine Syrup" means only syrup composed of sugar and the juice of the pomegranate. This the claimant denies, and contends that according to the accepted meaning of the words they signify only a sugar syrup having a certain color and flavor. The claimant is the manufacturer of the syrup seized, and concedes that in its manufacture no pomegranates are used. According to the claimant's evidence, the syrup is composed of sugar, citric and tartaric acid, and the juices of certain fruits not disclosed. There is no evidence to the contrary, and I find this to be the fact. That the syrup contains anything which may render it injurious to health the government does not claim.

The government has proved adulteration and misbranding, if it has proved that "Grenadine Syrup" has, in common acceptation, the limited meaning it asserts. If this is the fact, a purchaser relying on the label has the right to expect to get a syrup made with pomegranate juice, and is cheated if he gets a syrup from which such juice is absent. But unless the government has sustained the burden of proving that the words of the label carry with them the meaning claimed, according to an understanding so general as to

give any purchaser the right to believe that syrup so composed is what he is buying, neither charge has been established.

"Orange Syrup" or "Lemon Syrup" are words which, if used as labels, would no doubt give a purchaser the right to expect the syrup so labeled to have been made from the familiar fruits named. The pomegranate is a less familiar fruit, nor is "grenade," its French name, the name by which it is commonly known among us. "Grenadine" is nowhere used as the name of a fruit. The word is no doubt derived from "grenade," and among its meanings, in French, as the dictionaries of that language referred to show, is a syrup made of sugar and pomegranate juice. It does not necessarily follow, however, that the same meaning of the word is commonly used and accepted in this country. The question is one not to be settled by derivation or by dictionaries, except so far as these may tend to show the meaning of the word in common acceptation here. And whatever might otherwise be the force of the French definitions of "grenadine" as tending to establish the government's contention, I must regard it as greatly diminished by the fact that there is shown to be in force in France, since April 3, 1909, a decree of the French government, made in pursuance of legislation in 1905, for the suppression of fraud in the sale of goods and of food adulteration, which expressly provides that "the name 'Syrup of Grenadine' is limited to syrup of sugar with the addition of citric acid or of tartaric acid and flavored with vegetable substances."

Many English dictionaries have been referred to by counsel, but in only one of them is "grenadine" defined as a syrup made from pomegranates. This is Webster's New International Dictionary, published by Merriam & Co. (Eds. 1910 and 1912). Two other meanings are also given, having no relation to any kind of syrup, and the meaning first referred to is, as I understand it, given as a French meaning, rather than as a commonly accepted English meaning. No such meaning is given in Webster's International Dictionary, published by the same firm in 1904. The Century Dictionary and Cyclopedia Supplement, Ed. 1911, gives as one definition "a syrup, used for colds," and for this Larousse, one of the French dictionaries above referred to, is cited; but nothing is said about the syrup being made from pomegranates. I do not find "grenadine" defined in any other English dictionary as a syrup of any kind. The other wholly different meanings of the word are the only ones given.

According to the evidence at the trial "Grenadine Syrup" has been an article of commerce in this country only during the last 10 or 15 years. Some of the syrup dealt in under that name appears to have been imported chiefly, if not wholly, from France, and some of it to have been of domestic manufacture. No evidence was offered by the government tending to show that any of it, whether imported or made here, has been actually made from pomegranates, or has actually contained any pomegranate juice. The evidence satisfies me, on the other hand, that, speaking gen-

erally, no pomegranates or pomegranate juice are or have been used in making either the imported or domestic syrup, and that the imported syrup has been and is made as indicated in the decree of the French government above referred to.

The evidence fails also to satisfy me that "Grenadine Syrup" has, in common acceptation, the limited meaning claimed by the government. While it may be true that the names under which similar syrups are known and sold are generally taken from the source of the materials used, they are also sometimes indications only of the flavor or color, and are sometimes merely fanciful, as was admitted by one of the government witnesses. It appears to be true that, in France, whatever the definitions found in French dictionaries, syrup actually made from pomegranates would more properly be called "sirop de grenade" than "grenadine," "sirop grenadine," or "sirop de grenadine." To my mind, the fair conclusion from the evidence in the case is that the claimant's label, in common acceptation, means not that the syrup labeled is actually made from pomegranates, but that it possesses a certain characteristic flavor and color desired by consumers. That the purchaser of such syrup has the right, according to common understanding, to expect a syrup actually made from pomegranates, I am unable to regard as sufficiently proved. Indeed, it seems to me by no means proved that a syrup actually made from pomegranates would possess the flavor and color which purchasers of "Grenadine Syrup" have learned to desire and expect. A witness for the government testified that he had made syrup from pomegranates, and he produced samples of the result; but it did not appear that he had ever tried to sell any of it as "Grenadine Syrup." A witness for the defense who had tried the same experiment in manufacture testified that the results were unsatisfactory both as to color and flavor.

By consent of both parties, the case has been heard before the court without a jury. My views of the law and the evidence being as above stated, I must find for the claimant, and dismiss the information.