UNITED STATES v. 150 CASES OF FRUIT PUDDINE.

(District Court, D. Massachusetts. January 17, 1914.)

No. 523.

1. FOOD (§ 15*)—MISBRANDING—CONSTRUCTION OF WORDS.
    In a proceeding for the misbranding of food in violation of the Pure Food and Drugs Act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1911, p. 1354]), the words of the offending label are to be construed in their ordinary or customary meaning so far as they have one.
    [Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. § 15.*]

2. FOOD (§ 15*)—PURE FOOD AND DRUGS ACT—MISBRANDING.
    Pure Food and Drugs Act (Act June 30, 1906, c. 3915, 34 Stat. 771) § 8 (U. S. Comp. St. Supp. 1911, p. 1357), provides that the term "misbranding" shall apply to all articles of food, the package or label of which shall bear any statement regarding the article or its ingredients which shall be false or misleading in any particular, and that an article shall be deemed misbranded (subd. 4) if the package containing it or its label bear any statement, design, or device regarding the ingredients which shall be false or misleading in any particular, provided that any article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed adulterated or misbranded (1) in the case of mixtures or compounds known as articles of food under their own distinctive names, and not an imitation of, or offered for sale under the distinctive name of, another article, if the name be accompanied on the same label or brand with a statement of the place where the article is manufactured or produced, etc. Held, that such proviso was limited to the distinctive name under which a proprietary food was sold, and as so limited the proviso applied to the first paragraph of section 8, and protected distinctive names

from constituting misbranding; and hence, where a food was sold in cartons bearing the words "fruit flavored," when in fact the article was not fruit flavored, it was misbranded and subject to forfeiture.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. § 15.*]

3. FOOD (§ 15*)—MISBRANDING—DISTINCTIVE NAME.

Pure Food and Drugs Act (Act June 30, 1906, c. 3915, 34 Stat. 771) § 8, subd. 4 (U. S. Comp. St. Supp. 1911, p. 1358), provides that for the purposes of the act an article shall be deemed misbranded if the package containing it or its label shall bear any statement, design, or device regarding the ingredients which shall be false or misleading in any particular, provided that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed adulterated or misbranded (1) in the case of mixtures or compounds known as articles of food under their own distinctive names, etc. Claimant manufactured a proprietary food made largely of cornstarch, called "Puddine," and to designate the different colors used the words "cream vanilla" and "rose vanilla" as a trade-mark, the product being flavored with vanillin or synthetic vanilla obtained from oil of cloves. Held, that such words did not indicate that the food labeled "cream vanilla" was flavored with the highest quality of vegetable extract of the vanilla bean, and the "rose vanilla" with the highest quality of a compound of vegetable flavors of rose and vanilla, but that they were distinctive names, the use of which was protected by such provision, and their use did not constitute misbranding.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. § 15.*]

Information by the United States against One Hundred and Fifty Cases of Fruit Puddine. Decree for plaintiff.

James S. Allen, Jr., Asst. U. S. Atty., of Boston, Mass.
Ropes, Gray & Gorham, of Boston, Mass., for claimant.

MORTON, District Judge. This is a proceeding, under the Food and Drugs Act, by information (or libel) against 150 cases of a food product called "Puddine" or "Fruit Puddine." A jury having been waived by both parties, the case was tried before me upon fact and law. I find the material facts, in addition to those alleged in the information and admitted in the answer, to be as follows:

"Puddine" or "Fruit Puddine" is the distinctive name, adopted and used as early as 1889, of a proprietary food product consisting largely of cornstarch. It is manufactured by the claimant and is put up in packages or cartons of different flavors, adapted to the retail trade. It does not contain any deleterious or poisonous ingredient. It is not an imitation of, or offered for sale under the distinctive name of, any other article; and the name "Puddine" or "Fruit Puddine" is accompanied, on the same label or carton, with a true statement of the place where it has been manufactured.

The alleged misbrandings lie in the words "Cream Vanilla," "Rose Vanilla," and "Fruit Flavored," which appear upon the cartons. "Cream Vanilla" and "Rose Vanilla" are two of the many flavors in which Puddine is manufactured. All the cartons in question appear to have been marked "Fruit Flavored Puddine," to which is added on some cartons "Cream Vanilla," and on others "Rose Vanilla," according to the flavor of the Puddine therein.

The plaintiff contends that branding any article of food with the word "Vanilla," alone or in combination with other words, is a representation that it is flavored with vegetable extract of vanilla made from the vanilla bean; that the word "Cream" prefixed to the word "Vanilla" means the best or highest grade of vanilla; that the words "Cream Vanilla" on the claimant's cartons mean "flavored with the highest grade of vegetable extract of vanilla"; that the word "Rose" prefixed to the word "Vanilla" means a combination of the vegetable flavors of rose and vanilla; that the words "Rose Vanilla" on the claimant's cartons mean "flavored with the vegetable extracts of rose and of vanilla"; and that the words "Fruit Flavored" mean flavored with fruits (commonly so-called), capable of being used as flavoring substances.

The contention of the claimants, who are the manufacturers of the product, is that "Puddine" and "Fruit Puddine" are artificial words, adopted as the name of their product, and constitute a distinctive name for the article within section 8, subsec. 4 (1), of the act in question; that "Cream Vanilla" and "Rose Vanilla" are also artificial words, adopted by them to indicate the taste and appearance of their product, and import nothing as to the origin of the taste; that they are not false or misleading; and that the term "Fruit" or "Fruit Flavored," while adopted as an arbitrary or artificial part of the name, is in fact true, because the grain out of which the product is manufactured is, botanically speaking, a fruit.

[1] The words in question are to be construed in their ordinary or customary meaning so far as they have one. U. S. v. Seventy-Five Boxes of Pepper (D. C.) 198 Fed. 934; U. S. v. Thirty Cases of Grenadine (D. C.) 199 Fed. 932; Brina v. U. S., 105 C. C. A. 558, 179 Fed. 373.

[2] The distinctive or trade name of the product is "Puddine," or "Fruit Puddine," always accompanied on the cartons by words indicating the flavor. "Puddine" and "Fruit Puddine" are frequently used without the adjective "Fruit Flavored," which is not part of the name. It seems clear that "Fruit Flavored" does signify, as the plaintiff contends, that the article is flavored with "fruit" in the common, not the botanical, meaning of the word. As no such fruit is used in "Puddine," the words "Fruit Flavored" are untrue and misleading as applied to it; and the misleading effect of them is heightened by the picture of a dish of fruit which appears on some of the cartons. If Puddine were not an article of food known under its own distinctive name, it would clearly be "misbranded" within the act, by reason of the words "Fruit Flavored" upon the cartons.

The claimant contends, however, that articles of food which come within the terms of the proviso to the fourth subsection of section 8 are exempt from the operation of the Food and Drugs Act, and are not to be deemed misbranded, no matter what misstatements are made upon the cartons. The plaintiff contends: (1) That the first paragraph of section 8 prohibits all misbranding as therein defined, and is not limited by the proviso in question; and (2) that, even if the proviso does apply, it is not the intent of it to except from the operation of the act anything except the distinctive name itself; that even if, as to articles

of food which come within the proviso, misstatements which form part of the name itself are not forbidden, it is nevertheless true that any other false or misleading statements regarding the ingredients or substances contained in such articles constitute misbranding.

It has been said that the sole purpose of this statute "was: (1) To protect purchasers from injurious deceits by the sale of inferior for superior articles; and (2) to protect the health of the people by preventing the sale of normally wholesome articles to which have been added substances poisonous or detrimental to health." Sanborn, J., Hall-Baker Co. v. U. S., 198 Fed. 614, 616, 117 C. C. A. 318 (C. C. A. 8th Circuit). In other words, deception and unwholesomeness are the evils which the act is designed to prevent. The last part of section 8, providing that "manufacturers of proprietary foods which contain no unwholesome added ingredients" shall not be required "to disclose their trade formulas, except in so far as the provisions of this act may require to secure freedom from adulteration or misbranding," plainly implies that a proprietary product may be misbranded. The report of the Committee (House of Representatives, 59th Congress, First Session, Report No. 2118, March 7, 1906), and the debates, so far as they refer to the proviso in question, indicate that the attention of Congress was directed to protecting thereby established distinctive or trade names from being outlawed by the act.[1]

In U. S. v. Forty Barrels of Coca Cola (D. C.) 191 Fed. 431, 440, it was held that the proviso in question "was only intended to protect an article sold under its distinctive name from the charge of misbranding in so far as any statement or suggestion contained in the name it-

---

[1] The legislative history of this act is as follows: The bill which, after amendment, became the Food and Drugs Act of June 30, 1906, was Senate Bill No. 88, 59th Congress, First Session. It is printed in full in the Congressional Record for that session at page 897. It was reported favorably to the Senate December 14, 1905 (Senate Reports, vol. 1, No. 8, 59th Congress, First Session), passed by the Senate February 21, 1906 (Cong. Rec., 59th Congress, First Session, p. 2773), and was introduced in the House of Representatives the next day (page 2853), and there referred to the Committee on Interstate and Foreign Commerce. The Committee's report is found in House Reports, 59th Congress, First Session, vol. 1, Report No. 2118. The Committee of the House recommended amendment to the Senate bill by substituting for it the Hepburn Pure Food Bill (H. R. 4527, reported to the House January 18, 1904, and passed by the House) as amended by the Committee. The bill was passed by the House with amendments June 23, 1906 (Rec. pp. 9076, 9353), and sent back to the Senate, which refused to concur. Conference Committees filed identical reports June 27, 1906, setting out in full the bill as agreed upon and recommending that it pass (House Reports, vol. 3, No. 5056; Senate Docs. vol. 8, Doc. 521; Cong. Rec. pp. 9353, 9379, 9381). The second conference report making certain minor improvements in sections 1 and 2 of the bill, was filed June 29, 1906, giving the bill as finally enacted (House Reports, vol. 3, No. 5096). The bill was then passed and signed June 30, 1906.

As to the distinctive name proviso:

The subject-matter of this proviso appeared in the original Senate bill; and the proviso as finally passed first appears in substance in the bill as amended by the House Committee, where it is numbered paragraph 4 of section 7. There appears to have been no discussion at all of the "Distinctive Name" proviso in the debates in the Senate; and the only allusion to it in the debates in the House is found under date of June 23, 1906 (Cong. Rec., 59th Congress, First Session, p. 9068).

self is concerned." See, too, U. S. v. American Chicle Co., U. S. Dist. Court, District of Oregon (no opinion filed).

It is undoubtedly true that persons purchasing a proprietary article of food, like Puddine, get what they go for, whether all the statements on the carton are correct or not. But it is also true that the purchase of a proprietary article may well be induced by false statements concerning it upon the cartons; and it is not difficult to imagine cases in which reliance on such misstatements would work real injury to the purchaser. For example, if such an article were branded, "Contains no sugar," when in fact it did, the misbranding might induce the purchase by persons whose diet demanded absence of sugar. Such articles are within the purview of the statute. It does not seem to me that the proviso in question was intended to except them absolutely from the provisions of the act, and to leave the manufacturers free to make misrepresentations concerning them. Such a construction is out of harmony with all the rest of the statute, and disregards one of the principal purposes of it. It seems to me that the protection afforded by the proviso is limited to the distinctive name; and, as so limited, I have no doubt that the proviso applies to the first paragraph of section 8, and fully protects distinctive names from being misbranding.

I therefore find and rule that the words "Fruit Flavored" upon the cartons containing Puddine were a statement regarding such article, or the ingredients or substances contained therein, which was false or misleading and constituted misbranding within the statute.

The conclusion above reached makes it unnecessary to consider whether the use of the words "Cream Vanilla" and "Rose Vanilla" constitutes misbranding; but I infer from what was said at the argument that this is a point upon which a decision is particularly desired by the parties. I therefore proceed to find the facts and state my conclusions in reference thereto.

[3] No such extract, flavoring matter, or combination as "Rose Vanilla" is known to the trade, or to the public, except in connection with the defendant's product; nor any such extract or flavoring matter as "Cream Vanilla," except perhaps to a limited extent in the bottling trade, in which it is sometimes used to signify a high-grade vanilla extract; but such use is not known to the public generally, and is wholly unrelated to the use by the claimant. "Cream Vanilla," as applied to the claimant's product, is certainly not understood by the public as meaning "flavored with a high-grade vanilla extract." The word "Rose," followed by "Vanilla," was registered by the claimant in the United States Patent Office as a trade-mark applicable to "Puddine" on the 21st of May, 1889. Both "Rose Vanilla" and "Cream Vanilla" were in use by the claimant on Puddine before the Food and Drugs Act went into effect.

Puddine is not flavored with the vegetable extract of vanilla, but with vanillin, or synthetic vanilla, which is obtained from oil of cloves. Natural vanillin is found in the vanilla bean and forms the characteristic and most important element in the vegetable extract of vanilla. It is what gives to vanilla extract its characteristic taste. Synthetic vanillin is one of the comparatively recent discoveries in organic chem-

istry, of which indigo and madder are other examples. It is exactly the same as the natural vanillin. The flavor produced by synthetic vanillin is as wholesome as that produced by the vegetable extract of vanilla, and is substantially identical with it in taste; the difference, if any, being due to accidental substances in the natural extract. As used by the claimant, "Cream Vanilla" is applied to cream-colored Puddine flavored with vanillin, and "Rose Vanilla" to exactly the same thing colored pink with a harmless dye; the difference being in color only.

When a proprietary product is sold in different flavors, I see no reason why there may not be a distinctive name of a particular flavor, nor any reason for denying to such a name the protection of the proviso. The very purpose of the proviso, as I construe it, was to save distinctive names, which might be of great value, and the use of which might otherwise have been forbidden. "The purpose of the law is the ever insistent consideration in its interpretation." McKenna, J., U. S. v. Antikamnia Chem. Co. (January 5, 1914) 231 U. S. 654, 34 Sup. Ct. 222, 58 L. Ed. ——. I find and rule that "Cream Vanilla" and Rose Vanilla," as used with "Puddine," are artificial and distinctive names adopted by the claimant, the use of which is not misbranding. It is unnecessary to decide whether the word "Vanilla" applied to food amounts, as the plaintiff contends, to a representation that the taste thereof has been produced by the vegetable extract, and not by the synthetic product.

Decree for plaintiff.