**UNITED STATES v. MOLYNEAUX et al.**

**No. 231.**

Circuit Court of Appeals, Second Circuit.

Feb. 8, 1932.

Louis Halle, of New York City (Milton R. Kroopf, of New York City, of counsel), for appellant Molyneaux.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, William T. Cowin, and Henry G. Singer, Asst. U. S. Attys., all of Brooklyn, N. Y., of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The appellant, Cecil Molyneaux, and an alleged confederate, Malcolm McMasters, were convicted under count 2 of the indictment which charged the defendants with unlawfully operating certain apparatus for the transmission of energy, communications and signals by radio, for which a radio license was required by the Radio Act of 1927 (47 USCA § 81 et seq.), without first having obtained an operator's license to operate the apparatus from the Secretary of Commerce required by section 20 of the Radio Act of 1927 (47 USCA § 100).

The indictment is attacked as insufficient because it did not in terms charge that the appellant operated the apparatus for the purpose of transmitting signals or intelli-

gence beyond the borders of the state of New York, and was silent as to the intended or actual destination of the messages.

Section 1 of the Radio Act (47 U. S. C. § 81 [47 USCA § 81]) provides that no person shall use any apparatus for communication by radio from any place within any state when the effects of such use extend beyond the borders of such state. In other words, an apparatus, the effects of which extend beyond the state in which it is stationed, comes within the law requiring a station license. Section 20 of the Radio Act (47 USCA § 100) provides that the actual operation of all transmitting apparatus in any radio station for which a station license is required shall be carried on only by a person holding an operator's license.

The second count of the indictment essentially alleges that the defendants did operate an apparatus for the transmission of communications by radio for which a radio license was required by the Radio Act of 1927, without having first obtained an operator's license. In other words, it in effect alleges that, without an operator's license, they operated a radio apparatus for which a station license was required by section 1 of the act.

[2, 3] In charging a statutory offense it is ordinarily sufficient to charge it in the words of the statute. Baas et al. v. United States (C. C. A.) 25 F.(2d) 294; United States v. Brand (D. C.) 229 F. 847; Newton Tea & Spice Co. v. United States (C. C. A.) 288 F. 475; Lund v. United States (C. C. A.) 19 F.(2d) 46; Blain v. United States (C. C. A.) 22 F.(2d) 393; Olmstead v. United States (C. C. A.) 29 F.(2d) 239. Accordingly the allegation that the defendants operated a radio apparatus for which a radio license was required by the Radio Act of 1927, without first having obtained an operator's license seems to us to have incorporated by reference the provisions of section 1 requiring a station license in case of an apparatus, the effects of which extend beyond the borders of the state. The indictment was therefore sufficient in form and fairly notified the defendants of the charge which they had to meet.

There was plainly enough evidence to go to the jury to justify a finding that the apparatus operated was of the sort which required a station license and that the defendants did not have operators' licenses. But there was no adequate proof that Molyneaux, who is the only defendant who has taken an appeal, actually operated the apparatus at all. He was seen by the government witnesses to be bending over the apparatus handling two wires that came into the building where the radio instrument was and adjusting some screws (fol. 532–533), but there is not the slightest proof that he was operating it, though he was in fact an experienced operator. For that matter the other defendant McMasters was also a trained operator and the evidence showed that the only operation which had been actually detected was traced to him. When the officers entered, both defendants were in their shirt sleeves, both were alarmed and tried to escape. The evidence showed that Molyneaux was familiar with the premises, that he had written a letter to a friend in which he said, " * * * it's a heck of a scramble trying to outwit the authorities all the time," and that he had in a bag, among things found at the time of his arrest, orders for the purchase of supplies for radio apparatus. But, so far as the evidence goes, Molyneaux might have been on the premises to see McMasters or to get information that McMasters had received by radio, or was receiving, or to adjust or repair the apparatus. Such proof as the record contains goes no farther than to show that Molyneaux could operate the instrument and that for some reason, perhaps because he was engaged in illegal dealings in spirituous liquors (Exhibit 7), he was afraid of the public authorities. The trial judge refused to leave to the jury the question whether Molyneaux aided and abetted McMasters in operating without a license. Molyneaux could not be convicted for operating without a license, if he merely was acting as a mechanic and had not operated the apparatus in order to receive or transmit messages. The evidence on which McMasters was convicted tended to show that he alone had operated the radio instrument, and to exclude Molyneaux.

For the foregoing reasons the judgment of conviction is reversed as to the defendant Molyneaux.