## Nusbaum *v.* Hartford Fire Ins. Co., Appellant.

*Insurance — Fire insurance — Construction of policy—Doubtful meaning.*

1. Where a policy of insurance is prepared and issued by an insurance company, doubts in construction of the language used should be resolved in favor of the insured.

2. Where clear language has not been used in parts of a contract, but other parts of the instrument plainly show the intention of the parties, words may be inserted or substitutions made which will give effect to the known intention, when the ambiguity or equivocal meaning has been the result of palpable error.

3. Words may be added or substituted even though there is nothing in the instrument which shows what the intention of the parties was when they used the ambiguous expression.

4. Even where the instrument as it reads is not ambiguous, words may be added and substituted where it is thought the proper expression of the intention require them.

5. In a policy of insurance, the word "of" will be read "thereof" or the word "it" will be interpolated in order to give a meaning to an otherwise ambiguous and equivocal sentence.

6. Where a fire insurance policy provides for reimbursement at a specified rate per day "for loss of profits and other fixed charges due to the disablement of power plant and power machinery causing cessation of the operation of the plant," during the period between a fire and completion of rebuilding, the insured is not entitled to interest on the burned portion of the plant, wages of the superintendent and of men whose services were necessary until the building was ready for use, since such specific sums, if allowed, would duplicate the insurer's liability on a proper accounting to show loss of profits in which such charges would necessarily have to be considered.

7. Not decided whether an electric motor was a power plant or power machinery within the meaning of the policy.

Argued Feb. 5, 1923. Appeal, No. 9, Jan. T., 1923, by defendant, from judgment of C. P. Delaware Co., June T., 1920, No. 627, on verdict for plaintiff, in case of Lee Nusbaum v. Hartford Fire Ins. Co. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit on fire insurance. Before JOHNSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,409.22. Defendant appealed.

*Errors assigned* were various rulings on evidence, and instructions, quoting record.

*Albert L. Moise,* with him *W. Roger Fronefield,* for appellant.—The rule that in the construction of a contract the instrument must be considered as a whole, with a view to make each part harmonize, if possible, with every other part, is as fully applicable to insurance policies as to any other agreements: Braddock v. Life Ins. Co., 16 Pa. Dist. R. 127.

The term "fixed charges" does not include interest or payroll.

The evidence as to the loss of profits was insufficient to sustain the verdict: Robb v. Carnegie, 145 Pa. 324; Dinan v. Supreme Council, 213 Pa. 489; Macneir v. Wallace, 252 Pa. 323; Gail v. Phila., 273 Pa. 275.

*Albert J. Williams,* for appellee.—It is clear the policy means what the lower court said it means. But if it were not clear, and were actually doubtful it should be resolved in favor of the plaintiff: Teutonia Ins. Co. v. Mund, 102 Pa. 89; Metropolitan Life Ins. Co. v. Drach, 101 Pa. 278.

Plaintiff was entitled to be compensated for loss in fixed charges.

OPINION BY MR. JUSTICE SCHAFFER, March 5, 1923:

Defendant issued its policy of insurance to plaintiff against all direct loss and damage by fire to an amount not exceeding $5,000 on the use and occupancy of build ings belonging to the insured. The policy set forth: "The conditions of this insurance are, that if the above named buildings, or any part thereof, or the machinery, contained therein, or any part thereof, shall be destroyed, damaged or disabled by fire occurring during the term of this policy, so that the assured shall be entirely prevented from carrying on the business of, principally manufacturing and storage of ice, then this company shall be liable at the rate of not exceeding $16.67 per day for each working day of such prevention; and in case of such buildings and machinery are so disabled as to prevent the full daily average profit yielded by the business of the insured previous to the fire from being realized, then this company *shall be liable per day for that proportion of not exceeding $16.67, which the profit so prevented from being realized bears to the full average daily profit previous to the fire,* not exceeding in any case the sum insured." Another clause reads: "It is further understood and agreed that it is the intention of this insurance to *reimburse the insured for loss of profits and other fixed charges due to the disablement of power plant and or power machinery,* causing cessation of the operation of the plant (in whole or in part), caused by fire in such building or buildings on the premises." A third provision recites: "The intention of this policy is that the insured shall be indemnified for *actual loss of profits* during the time when the premises above described could, with ordinary diligence and dispatch, have been repaired or rebuilt with like material and like construction and the machinery replaced therein."

There were other similar policies covering the property, as a result of which defendant was liable for but one-fourth of the entire loss.

Plaintiff's plant consisted of four separate buildings, one of which, an ice storage house, was destroyed by fire. In this building was an elevator used to elevate and lower the ice, operated by an electric motor. There was no other machinery in it and none other was in any way affected by the fire.

Suit was brought on the policy and a verdict and judgment recovered for $3,409.22, from which defendant appeals.

Plaintiff was permitted to recover for loss of profits, based upon an average production of 460 cakes of ice per day before the fire, on which there was an estimated profit of 25 cents per cake, and an average production of $244\frac{1}{2}$ cakes per day after the fire at a like profit, the loss being $53.88 per day for 176 days, and, in addition, under the clause in the policy providing for recovery for loss by "fixed charges," a sum, representing interest on the value of the building during part of the time it was being rebuilt, and also for a proportion of the wages of the superintendent of the plant and of laborers employed in storing the ice, who, it was testified, were necessary to be retained in order to enable full operation of the plant to be resumed when the storage house was rebuilt.

Appellant's first position is that the court below was in error in holding, there being only a partial suspension of business and a partial loss of profits, that the policy permits a recovery of the entire amount of profits lost, not exceeding $16.67 per day up to the amount of the policy; that the jury should have been instructed that there could be a recovery for only a proportionate part of $16.67 per day, measured by the ratio of the profits prevented by the fire from being realized to the average daily profit before the fire. On this branch of the case, we think the court properly construed the policy. While its language as to this feature of liability is not entirely clear, it must be borne in mind that the policy was prepared by the company and doubts in construction of the language used should be resolved in favor of the insured:

Stacey v. Franklin Fire Ins. Co., 2 W. & S. 506; Western Ins. Co. v. Cropper, 32 Pa. 351; Buckley v. Garret, 47 Pa. 204; Teutonia Fire Ins. Co. v. Mund, 102 Pa. 89; Livingstone v. Boston Ins. Co., 255 Pa. 1; Hillman Transportation Co. v. Home Ins. Co., 268 Pa. 547.

The words in controversy are those covering the contingency of a partial loss, in which event the liability is "that proportion of not exceeding $16.67 which the profit so prevented from being realized bears to the full average daily profit previous to the fire." The language "for that proportion of not exceeding $16.67" is not intelligible as it stands, because the proportion is not stated. That proportion of what? In effect, defendant says "of $16.67," and would supply these figures so that it would read "for that proportion of $16.67 not exceeding $16.67." To say the least, this would be a most awkward form of expression. Plaintiff would have the word "of" read "thereof." This would make the phrase intelligible and state a proportion as it would then read "for that proportion *thereof* [of the full average daily profit previous to the fire] not exceeding $16.67 which the profit so prevented from being realized bears to the full average daily profit previous to the fire." If the effect of the fire had been to entirely prevent the insured from carrying on his business, the company was to be liable "at the rate of $16.67 per day." That is to say, if the lost profits amounted to that sum, then it was to be paid. It is difficult to comprehend why if the "buildings and machinery are so disabled as to prevent the full daily average profit yielded......previous to the fire from being realized" and where the partial loss amounted to $16.67 or more, that that sum should not be paid just as it would be required to be if the "insured shall be entirely prevented from carrying on the business." When by the subsequent explanatory or intent-declaring clause the company endeavors to make clear the obligation assumed, it says, "The intention of this policy is that the insured shall be indemnified for actual loss of profits,"

and he would not be so indemnified if his actual loss of profits equalled or exceeded $16.67 per day unless he was paid that sum.

If the word "of" be read "thereof" or the word "it" be interpolated between "of" and "not," so that the phrase shall read "that proportion thereof not exceeding $16.67" or "that proportion of it not exceeding $16.67," all doubtfulness of meaning is dispelled. We are of opinion that the policy should be thus construed. Such interpolation of a word or part of a word, to clear the meaning, is justified.

The primary object in construing a contract is to discover the intention of the parties. This is ordinarily to be taken from the instrument itself, effect being given to every part where possible, and each part being read in the light of and in connection with every other part. Where clear language has not been used in parts of the contract but other parts of the instrument plainly show what the intention of the parties is, there is a line of cases which decides that words may be inserted or substitutions made in order to give effect to the known intention when the ambiguity or equivocal meaning has been the result of palpable error. Illustrative of this are the following: Knisely v. Shenberger, 7 Watts 193; Danker v. Atwood, 119 Mass. 146; Ex parte Fulton, 7 Cowen (N. Y.) 484; and Scheid v. Leibshultz, 51 Ind. 38, where one who signed a surety bond was held as surety although he was not named in the body of the bond; Schroeder v. Griggs, 80 Kans. 357, 102 Pac. 469, where a negative was read as an affirmative; Irwin v. Nichols, 87 Ark. 97, 112 S. W. 209, where the word "not" was inserted in a letter so as to make the effect thereof that a particular offer had not been made rather than that it had been made; Marion v. Faxon, 20 Conn. 486, where "me" was read "him"; Butler v. Bohn, 31 Minn. 325, 17 N. W. 862, where "eleven hundred" was read "eleven hundred dollars"; Gran v. Spangenberg, 53 Minn. 42, 54 N. W. 933, where the word "one" was in-

serted before "hundred and fifty dollars," the figures "$150" being on the margin; Cornell v. Green, 88 Fed. R. 821, affirmed in 95 Fed. R. 334, where "north" was read "south"; Walker v. Douglas, 70 Ill. 445, where the use of the word "sold" was held not to convey any title; Sisson v. Donnelly, 36 N. J. L. 432, where a party different from the one named as such was held to be the grantee; and Monmouth Park Assn. v. Wallis Iron Works, 55 N. J. L. 132, 26 Atl. 140, where the word "fail" was inserted in a building contract.

There is another line of cases which holds that words may be added or substituted, even though there is nothing in the instrument itself which shows what the intention of the parties was when they used the ambiguous expression. This is especially true when there are other indications as to what the intention was, as, for example, the prior conduct of the parties, as in Potthoff v. Safety Armorite Conduit Co., 143 N. Y. App. Div. 161, 127 N. Y. Supp. 994, where a proposed form of contract which had been rejected clearly showed what the intention was, that particular form of contract having been rejected, not because of any objection to its form of stating the matter which was later the subject of controversy but because of other avowed reasons.

Even in the absence of such other indications, construction has been given to ambiguous and equivocal phrases so as to give effect to what the courts thought was the intention of the parties. For example, in Williamson v. McClure, 37 Pa. 402, where there was an agreement to deliver bonds in a certain event, it was held that no delivery need be made even though the specified event had occurred, in the absence of a previous demand by the party entitled. The court looked to the "relation of the parties." And in Hathaway v. Power, 6 Hill (N. Y.) 453, although premises attempted to be conveyed were described as being 160 acres, it was held they passed although there were actually 185 acres. In Edwards v. Jefferson Standard Life Ins. Co., 173 N. C. 614,

92 S. E. 695, an instrument signed by two persons was held to be an assignment of the interest of both although the singular person had been used in the body thereof in describing the person affected thereby. In Pacific Surety Co. of California v. Toye, 224 Mass. 98, 112 N. E. 653, the amount of the yearly premium on a bond was inserted, although a space in the instrument obviously prepared for the insertion thereof had been left blank, where the words and figures "Premium $5.00" were on the margin and oral evidence of the amount and promise to pay had been admitted without objection.

But even where the instrument as it reads is not ambiguous, words have been added and substituted where it was thought proper expression of intention required them. Thus, in Dodd v. Mitchell, 77 Ind. 388, the word "yearly" was inserted in a lease so as to change the price per acre named from a five year period to a yearly rental. In Killian v. Harshaw, 29 N. C. 497, an entire clause was read other than as it was written because as written a party was liable to pay the same amount to two persons, while the court thought that no possible double payments had been intended. In Jackson v. Topping, 1 Wendell (N. Y.) 388, "and" was read "or" even where it worked a forfeiture. And in Holmes v. Parker, 125 Ill. 478, 17 N. E. 759, it was held the payee of a note was the party in whose favor authority to confess judgment thereon had been given although the instrument named another; that other had no interest in the note and his name was in the instrument because a printed form had been used.

While the court properly construed the clause of the policy to which we have been referring, it took a mistaken view of another clause which leads to a reversal of the judgment. Plaintiff was permitted to testify that the elements which entered into the loss of "fixed charges" he sustained, were interest on the money on the burned portion of the plant, which he placed at $750, also the wages of the superintendent and of certain men whose services it was necessary to retain until the build-

ing was ready for use, these being estimated at $3,815. Allowances for none of these could be made under the terms of the policy, which so far as recovery for fixed charges is concerned limits the insured to be reimbursed for *"fixed charges due to the disablement of power plant and or power machinery,* causing cessation of the operation of the plant in whole or in part." The "fixed charges" for which reimbursement is to be made are those due to the disablement of the power plant or power machinery, causing cessation of the operation of the plant; this could not include loss of interest, wages of a superintendent or of employees. In addition to this, it is manifest that in any proper statement of an account to show loss of profits, interest and wages paid would have to be considered, so that a specific allowance for them would necessarily duplicate defendant's liability.

The view we have expressed renders it unnecessary for us to consider whether or not the electric motor in the storage house was power plant or power machinery within the meaning of this clause of the policy; when necessary, that question will be considered and decided.

As the case goes back for another trial, it may not be amiss to say the method pursued to show loss of profits was not one which leads to certainty of demonstration. It would seem to us they can and should be more accurately measured on another trial.

The second, third, fifth and sixth assignments of error are sustained and the judgment is reversed with a new venire.