## NEWTON TEA & SPICE CO. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1923.)

No. 3602.

**1. Food ⟨⟩20(1)—Information for misbranding held sufficient.**

Information under Food and Drug Act, § 8 (Comp. St. § 8724), for misbranding an article of food, charging that the label bore statements that the article was an excellent substitute for eggs and could be used in place thereof for baking and cooking purposes, which statements were false and misleading, *held* sufficiently definite.

**2. Indictment and information ⟨⟩71—Certainty required in information.**

The certainty required in an information is only such as will fairly inform the defendant of the offense intended to be charged, so as to enable him to prepare his defense, and so as to make the judgment a complete defense to a second prosecution for the same offense.

**3. Indictment and information ⟨⟩110(3), 121(1)—Language of statute generally sufficient, and bill of particulars may be asked for.**

It is generally enough to describe a statutory offense in the words of the statute, and if more particularity is desired defendant may move for a bill of particulars.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Food ⊚⟳15—Information for misbranding held not within exception in statute.**

The proviso in Food and Drug Act, § 8 (Comp. St. § 8724), that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed adulterated or misbranded in certain cases, does not apply to a case where the charge is misbranding, and is not directed against the name, but against false statements on the label.

**5. Food ⊚⟳15, 21—Representations on label held not statement of opinion, and evidence of nutritive value held admissible.**

A statement on a label of an article that it is an excellent substitute for eggs, and is to be used for baking and cooking purposes, one teaspoonful in place of each egg called for in a recipe, is not a statement of opinion, but of fact, and is a representation to ordinary purchasers that one teaspoonful of the article is substantially equivalent to one egg for all the purposes, including nutrition, involved in the use of egg in baking and cooking, and in a prosecution for misbranding evidence of their comparative nutritive value is competent.

**6. Food ⊚⟳15—Descriptive statements in label must be truthful.**

A label on a food package, which undertakes to state generally the nature of the contents, is addressed to purchasers, and must truthfully advise them respecting the contents.

In Error to the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Information by the United States against the Newton Tea & Spice Company. Judgment of conviction, and defendant brings error. Affirmed.

See, also, 275 Fed. 394.

W. J. McCauley, of Cincinnati, Ohio (McCauley & Simmonds, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Allen C. Roudebush, Sp. Asst. Dist. Atty., of Cincinnati, Ohio (Thomas H. Morrow, U. S. Atty., of Cincinnati, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error was proceeded against by information for the violation of the misbranding provisions of the National Food and Drug Act (Act June 30, 1906, 34 Stat. 768, c. 3915, §§ 2 and 8; Comp. St. §§ 8718 and 8724). The article of food in question is an egg substitute called "Eggno," whose principal ingredients and their relative proportions are commercial (imported) egg albumen and egg yolk, dried and pulverized (aggregating about 15 per cent.); powdered and evaporated skimmed milk, about 35 per cent. (as indicated by the government's proofs, apparently much less by defendant's formula), and tapioca starch, between 40 per cent. and 50 per cent. There were also contained small amounts of powdered sugar, vegetable gum, and salt, with an artificial coal tar coloring, not alleged to be either injurious or unlawful. The product is not claimed to contain any deleterious ingredients or to be injurious to health. It is sold in packages containing 36 teaspoonfuls. The carton contains the label and statements which we reproduce in the margin.[1]

[1] "Newton's Eggno. Artificially colored. To be used in place of eggs in baking and cooking. 3½ oz. net. An excellent substitute for eggs. Eggno is an excellent substitute for eggs and is to be used for baking and cook-

The alleged misbranding consists in the following statements concerning the product and the constituents and uses thereof, viz.:

"To be used in place of eggs in baking and cooking. * * * An excellent substitute for eggs. * * * To be used for baking and cooking purposes. * * * Eggno contains the constituents that cause fresh eggs to fill such an important place. * * * One even teaspoonful is to be used in place of each egg called for in recipes. * * * Use a teaspoonful for each egg called for * * *"

which statements are alleged to be false and misleading in that the product was not a substitute for eggs and could not be used in place thereof for baking and cooking; further misbranding being charged in that it was so labeled as to deceive and mislead purchasers into the belief, contrary to the fact, that the product was in truth a substitute for eggs and could be used in place thereof for baking and cooking. A motion to quash the information because indefinite and argumentative, and because the court had no jurisdiction, was overruled. (275 Fed. 394), as was a demurrer to the information as not stating facts constituting an offense against the federal laws. There was trial to a jury. A motion to direct verdict for defendant was overruled, and the case submitted, resulting in verdict and judgment for the government.

The meritorious controversy arises from the opposing contentions of the government and defendant, respectively, as to the scope of the comparison of the value of eggs and Eggno. The government contends that such comparison must take into account their respective food values, and presents undisputed evidence that while eggs contain in marked degree, not only proteids or tissue-building elements absolutely necessary to growth, but calorific or energy-supplying elements, Eggno contains neither of those elements to more than about one-seventh the extent as do eggs (which is, in effect, about the proportion in which egg constituents enter into the manufactured product), and thus that Eggno signally fails in food value. The government also introduced testimony to the effect that Eggno was inferior to eggs in that the latter produced the better baked product, both as respects consistency and taste. Defendant contended that, as Eggno was intended only for use in baking and cooking, the question of comparative food value should be entirely disregarded, and that the comparison should be confined to the qualities of binding or settling,

ing purposes. Splendid for cookies, cakes, muffins, fried cakes, bread puddings, gravies. Just the thing for griddle cakes, noodles, etc. Eggno is an article of real merit and is far superior to the usual egg substitutes on the market. Eggno contains the constituents that cause fresh eggs to fill such an important place in every kitchen. Eggno is the result of scientific research, is composed of pure materials, is nutritious and is economical, as one even teaspoonful is to be used in place of each egg called for in recipes requiring eggs. This package contains 36 even teaspoonfuls. Guaranteed to conform to the Pure Food Laws. Directions. Dissolve Eggno in lukewarm water or milk by first making a paste and then adding the balance of the water or milk. Use a teaspoonful for each egg called for in recipes requiring eggs. In baking use a trifle more baking powder than if eggs were used. Eggno does not take the place of baking powder. Prepared and guaranteed by the Newton Tea & Spice Co., 12–14–16–18 East Second St., Cincinnati, Ohio."

or producing desired fluffiness, texture, flavor and color, and presented evidence sharply conflicting with that of the government concerning the effectiveness of Eggno as compared with eggs, with respect to appearance and flavor of baked and cooked products.

In overruling motion to direct verdict for defendant, the trial judge rejected the proposition that, as matter of law, the comparative nutritive values of Eggno and eggs should not be taken into account, and left it to the jury to find as facts whether the statement on the carton, that one even teaspoonful is to be used in place of each egg called for in cooking recipes, is equivalent to an assertion that one teaspoonful is equal to an egg in such recipe; whether Eggno contains the constituents which cause fresh eggs to fill such an important place in the kitchen; whether Eggno is a substitute for eggs, as that language would be understood by the ordinary purchaser; and whether one teaspoonful of Eggno may properly be used in cooking recipes in place of each egg called for. The jury was instructed that, if the product in question is in fact well adapted to be used instead of eggs in baking and cooking, and if it is in truth genuinely fit to be used in place of eggs for those purposes, then the label is not false, but that if Eggno was not well fitted to be used as a substitute for eggs in baking and cooking, and if it is not genuinely well adapted to be used in place of eggs, then the label was false. The jury was further instructed that the question is not, on the one hand, whether the product is absolutely worthless, or, on the other hand, whether it is a complete and perfect substitute for eggs in all respects, but that the true question is whether the language of the label complained of in the information is false and misleading to the ordinary purchaser in the respects charged therein.

[1-3] In our opinion the motion to quash the information was rightly overruled. The statute (Comp. St. § 8724) provides that an article of food shall be deemed to be misbranded "if the package containing it or its label shall bear any statement * * * regarding the ingredients or the substances contained therein, which statement * * * shall be false or misleading in any particular." We think the information is not subject to criticism as being indefinite and argumentative. The certainty required in the information is only such as will fairly inform the defendant of the offense intended to be alleged, so as to enable it to prepare its defense, and so as to make the judgment a complete defense to a second prosecution for the same offense. United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Tyomies Publishing Co. v. United States (C. C. A. 6) 211 Fed. at page 389, 128 C. C. A. 47; Bettman v. United States (C. C. A. 6) 224 Fed. 819, 826, 827, 140 C. C. A. 265. We think defendant was by the information in question sufficiently informed of the nature of the accusation and was fully protected thereby. It is the general rule that it is enough to describe a statutory offense in the words of the statute; and if in this case defendant was in doubt whether the government would claim that the product contained the same food value as eggs, or that it lacked leavening or some health producing quality, it was open to it to apply for such additional information by way of a bill of particulars.

Dierkes v. United States (C. C. A. 6) 274 Fed. 75, 77, 79 et seq.   No such request was made.

[4] The asserted lack of jurisdiction of the court is based in part upon the proviso to the section above quoted, that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded (in the case of mixtures or compounds known as articles of food, under their own distinctive names, and not an imitation of or offered for sale under the distinctive name of another article), if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced.   We think this proviso has no application to a case where, as here, the charge is misbranding, and is directed not against the name, but against the false statements upon the label.   United States v. 150 Cases, etc. (D. C.) 211 Fed. 360; United States v. 40 Barrels, etc. (D. C.) 191 Fed. 431, 440.

[5] Nor do we see any merit in the proposition that the statement on the label that Eggno is an excellent substitute for eggs, and is to be used for baking and cooking purposes, is merely one of opinion, and so within the Johnson Case, 221 U. S. 488, 489, 31 Sup. Ct. 627, 55 L. Ed. 823, where it was held that a statement on the labels of bottles of medicine that the contents are effective as a cure for cancer is not within the statute, even if misleading, as being false only in its commendatory and prophetic aspect.   Such is not the case with the label we are here considering.   It not only represents the product as a substitute for eggs—a representation the effect of which, if it stood by itself, we are not called upon to consider—but it states as facts that the product can be used in place of eggs for baking and cooking, that it is nutritious, and that it contains the constituents of fresh eggs. Regardless of the claimed literal truth of each one of these assertions, they must be taken in connection with each other, and with the further recommendation that one teaspoonful be used in place of one egg, and in connection with the further fact that this label was not intended to be carefully dissected with a dictionary at hand, but rather to produce an impression upon the ordinary purchaser of such an article, and, when so taken, it was open to the jury to conclude that these representations were intended to produce the belief that one teaspoonful of the product was substantially equivalent to one egg for all the purposes, including nutrition, involved in the use of eggs in baking and cooking.   With that interpretation, of course, these statements pass beyond mere commendation, and in the aspect of the case presented by the contention that verdict for respondent should have been directed it is not necessary to consider what would have been the effect of the label if any part of it had been omitted.

In our opinion the trial judge did not err in refusing to withdraw from the jury's consideration the question of the comparative nutritive value of Eggno.   In view of the statements in the label to which we have just referred, the mere reference to baking and cooking is not, in our opinion, enough to confine the statements of quality to considerations of appearance and flavor.   The terms "baking" and "cooking" relate to foods, and eggs are a well-known article of food, not only

alone, but in combination with other articles of food. Granted that the statement that an article is or may be used as a substitute for another article does not amount to an assertion that it is as good for all purposes as such other article, in our opinion the statements upon the label, considered together, can reasonably mean, and could reasonably have been intended to mean, no less than that in ordinary culinary compounds Eggno would produce the same or similar results as eggs.

It follows from these views that there was no error in the admission of testimony as to the comparative food value of eggs and Eggno. Nor do we think the court erred in refusing defendant's special requests to charge, many of which were expressly based upon the elimination of food values from consideration. While each of the rejected requests did not in terms declare such elimination, all, as frankly said by defendant's counsel (we do not use his statements in detail or in his exact words), were designed to convey to the jury defendant's contention that the nutritive value of a whole egg for all purposes was not in issue, and that the evidence already admitted as to the tissue-building and energy-supplying elements of eggs was incompetent.

[6] It is thus not material whether or not in the case of some of the refused requests a sufficient ground of refusal was stated. At least as applied to the facts in this case, we find no error in the instruction that the purpose of the label was to "truthfully advise the purchasers of the contents." We say this in full recognition of the fact that a label may, in the absence of fraud, be entirely void of any statement of content, and be entirely outside the provisions of the act; but in this case defendant undertook to state generally the nature of the contents of the package.

While we have not discussed in detail each argument presented by defendant in favor of its contentions, we have carefully considered them all, with the result that we find no error in the proceedings below.

The judgment of the District Court is accordingly affirmed.