Twp. of Mt. Lebanon to Use, Appellant. *v.* Metropolitan Casualty Ins. Co. of New York.

210

Argued April 21, 1932.

Before TREXLER, P. J., GAWTHROP, CUNNINGHAM, BALDRIDGE, STADTFELD and PARKER, JJ.

*W. Walter Braham*, and with him *William D. Cobau, J. Glenn Berry* and *Robert E. McCreary*, for appellant, cited: Portland Sand & Gravel Company v. Globe Indemnity Company, 301 Pa. 132; Marion Township School District v. Evans, 295 Pa. 280; School District of Eddystone v. Lewis, 98 Pa. Superior Ct. 229.

*H. E. McCamey*, and with him *Charles A. Woods, Jr.*, and *Dickie, Robinson and McCamey*, for appellee,

cited: Greene County v. Southern Surety Co., 292 Pa. 304; Borough of Somerset v. Barber, 103 Pa. Superior Ct. 20; Tarentum Realty Company v. McClure, 230 Pa. 266.

OPINION BY CUNNINGHAM, J., July 14, 1932:

In this action on an additional bond, given by a contractor, as principal, and the defendant, as surety, to protect laborers and materialmen, the main question is whether the bond was intended to cover materials furnished by the use-plaintiff prior to the date on which it was executed. The court below decided the questions of law raised by the defendant's statutory demurrer in its favor on the ground that the bond was intended to operate prospectively only; from the judgment thus entered for defendant the use-plaintiff has appealed.

The facts as set forth in the statement of claim are: The Township of Mount Lebanon, the legal plaintiff, entered into a contract on October 8, 1928, with the Southern Construction and Supply Corporation for the grading, paving and curbing of a road in that township. Defendant, as surety, executed the usual performance bond. The use-plaintiff, a cement company, sold the contractor, between October 14 and October 17, 1929, cement which entered into the construction. Under the use-plaintiff's credit terms, the contractor was entitled to a period of thirty days within which to make payment. The contractor never paid for the cement, but subsequently went into bankruptcy, and the use-plaintiff has received only a three per cent dividend from the bankrupt estate.

On November 12, 1929, the contractor, as principal, and defendant, as surety, entered into an additional bond in the amount of $35,488, naming the Township of Mount Lebanon as obligee and conditioned that the contractor, "shall and will promptly pay, or cause to

be paid, to any person or persons, co-partnership 'or co-partnerships, corporation or corporations all sums of money which may be due for labor performed or materials supplied and furnished in and about the performance of the work covered by the said contract.''

The construction work was accepted by the township on December 30, 1929. In form, this bond is similar to the one considered by us in City of Pittsburgh to the use of The Bessemer Cement Corporation v. Commercial Casualty Insurance Co., 106 Pa. Superior Ct. 254, in that the township is the sole obligee, and no right of action thereon is expressly given to laborers and materialmen. The distinction, however, is in the fact that this bond was executed subsequent to the Act of March 28, 1929, P. L. 106, which further amended the earlier Acts of May 6, 1925, P. L. 546, and May 10, 1917, P. L. 158, so as to require townships, among other municipalities, to take out an additional bond for the payment of all labor and material entering into the construction of ''roads'' as well as into public buildings, etc. Therefore, when this bond was executed laborers and materialmen had legislative authority to sue thereon, although that right was not specifically given in the bond. Defendant does not seriously challenge the general right of action; the statement in its brief that the Act of 1929 required such a bond only ''under all' contracts subsequently let'' is not sound, since no such language appears in that statute or in those to which it is an amendment. As stated above, the serious defense is that the defendant surety company should not be held liable for materials furnished for the job prior to the execution of its bond.

We are not convinced that the court below was justified, under all the averments in the statement and the reasonable inferences arising therefrom, in finally disposing of this case upon the rebuttable presumption

that bonds are intended to secure losses sustained after, and not before, their execution.

In the first place, we think the lower court should not have ignored the averment as to the credit terms of the use-plaintiff. The statement of claim alleges that under these terms the contractor had thirty days in which to pay for the cement, which would make the obligation mature on November 17, 1929—five days after the execution of the bond. If, in fact, these credit terms were a part of the contract between the use-plaintiff and the contractor, the latter was not in default until November 17, 1929. It would seem reasonable that the definitive point of responsibility should be the time when the obligation was due and payable, and not when the materials were furnished. Nor is it a valid objection, as urged by defendant, that the materials could not have been furnished in reliance upon the bond; they may have been furnished in reliance upon a promise of a bond to be executed in the future; but even if such were not the case, the matter is immaterial, as no consideration need move from the materialmen. The sole issue is whether a bond was in fact given under which materialmen have a right of action. Nor are we impressed by the case of U. S. Fidelity and Guaranty Co. v. Fultz, 76 Ark. 410, which involved a bond required of fire insurance companies, conditioned for the payment of all claims arising under any policy, It is true it was held that the liability of the surety was fixed when the loss by fire occurred, and not from the date when the amount due under the policy became payable. As the opinion indicates, however, this construction was required by the terms of the statute and was for the protection of the insured—not of the surety.

Again, we are not convinced that the bond was intended to have only a prospective effect. In support of its decision the court cites Tarentum Realty Co. v.

McClure et al., 230 Pa. 266, in which it was said (at page 270): "The general rule is that bonds are presumptively intended to secure losses sustained after and not before their execution. This, however, is only a presumption which may be overcome if the facts show that past as well as future defaults were intended to be covered by the bond."

This is undoubtedly the general rule of construction, but, as the presumption is rebuttable, a court should consider any facts which might tend to establish a contrary effect. The true intent of the bond is to be determined not only from its language, but from all the surrounding circumstances: Commonwealth to Use v. Fidelity & Deposit Company of Maryland, 224 Pa. 95. In the latter case the court said (at page 100), referring to the presumption: "It is one of those general rules to which there are so many exceptions under the facts of particular cases as to require the greatest care in its application in order that injustice may not be done or the legal rights of parties be defeated."

The court there held a surety company upon the additional bond of a trustee liable for a loss resulting from the misconduct of the trustee previous to the date of the bond. In reaching this determination it took into account not only the language of the bond itself, but the application made by the trustee for the bond and all the surrounding circumstances, including the character of the trust, its indefinite duration, the purpose for which the bond was given, and the investigation made by the surety company prior to its execution. We think these and similar matters should be investigated and considered in this case before it is finally disposed of.

It is to be noted that the bond is general in its terms, referring to the execution of the contract and requiring that the contractor pay all money which may be due for labor performed or materials supplied and

furnished in and about the performance of the work. Since it was required by statute, and since that statute specified only one additional bond, it would seem natural to infer that the parties furnishing the bond intended it to cover any and all obligations arising in the course of the job. It has several times been held that where a bond definitely fixes a period during which the principal is to do, or refrain from doing, something, it covers all defaults during that period, even though they may have occurred before the date on which the bond was actually executed. See, for example, Mc-Mullen et al. v. Winfield Building & Loan Assn., 64 Kans. 298, 67 Pac. 892, 56 L. R. A. 924. In that case the bond recited that the principal had been elected secretary of the plaintiff association for the year beginning January 1, 1885, and ending December 31, 1885, and was conditioned for the faithful performance of his duties during that year. The bond was not actually accepted until February 6, 1885, and a considerable amount of the funds for which the secretary failed to account were received by him during the intervening period. Despite this, it was held that the parties contemplated that the bond should be retrospective in its operation and should indemnify the association against defaults occurring from the first to the last of the year. While it is true that no definite period is specified in this bond, the statute under which it was given, and with which the surety was undoubtedly familiar, contemplated that security be given for all materials going into the job at any time, and it may reasonably be assumed that the bond was intended to be equally broad.

Such a construction is particularly reasonable if it gives practical effect to the bond. It is a common sense rule of construction to interpret contracts so as to give them life and force. The bond here was executed November 12, 1929—within two months of the

completion of the contract—although the contract had been in operation for more than a year. It is quite possible that if the facts are fully developed it will be found that most, if not all, of the materials necessary for the job had been furnished before the bond was given. If such should prove to be the case, the normal inference would be that the bond was intended to operate retrospectively, as it is not to be assumed that the parties intended to enter into a hollow obligation.

A similar example may be found in Hurlburt v. Kephart, 50 Colo. 353, 115 Pac. 521. Kephart was appointed State Treasurer on January 12th of the year in question. On January 18th a bond was given with a surety reciting that the treasurer had determined to and would deposit funds in a certain bank, and conditioned that the bank should faithfully keep all sums of money so deposited. Upon the insolvency of the bank, the surety contended that the bond did not apply to deposits made before its execution. It appeared, however, that the funds already in the bank when the bond was executed were the customary deposits for the year and that no subsequent deposits were contemplated. It was held, on these facts, that the surety was liable for the amount of the deposit, as any other construction would have rendered the bond entirely ineffective for all practical purposes. The same principle may be applicable here—depending on the facts.

Another proper subject of inquiry would be the approximate cost of the labor and materials involved in the construction. The bond is in the sum of $35,488. If it be found that this amount is approximately the cost of such labor and materials, it might reasonably be inferred that the surety company intended to guarantee payment of the total cost and not merely such costs as might accrue after the execution of the bond. The same inference would follow if, as is often the

case, the bond was drawn in double the amount of the cost.

A somewhat analogous case is that of Commonwealth, to use, v. Allen, 254 Pa. 474, involving a trustee's bond in the amount of $3600, conditioned for faithful accounting for the sale of a certain property for the consideration of $1800. The surety attempted to evade its responsibility on the ground that the trustee had received $450 as an advance payment before the bond was filed. It was held, however, that it contracted for liability for the full amount, and so should be held to its obligation.

These considerations are presented, not to control, or even indicate, what the final determination of the court below should be, but as furnishing suggestions for its guidance when all the circumstances of the case have been developed. We merely determine now that the court was not justified in limiting itself to the language of the bond and the presumption relied upon in support of its decision. As was said in Aldridge & Co., for use, v. Eshleman, 46 Pa. 420 (at page 426): "Whilst it is true, that the construction of the paper was for the court, it was their duty to construe it with reference to the subject-matter and the circumstances of the parties, and these were explainable by parol evidence."

The judgment, in favor of the defendant, is reversed and the record is remitted for further proceedings under the twentieth section of the Practice Act not inconsistent with this opinion.