507 A.2d 389

**ERIE INSURANCE EXCHANGE, Appellant,**

**v.**

**TRANSAMERICA INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1984.

Filed Jan. 17, 1986.

Reargument Denied March 31, 1986.

Charles Kirshner, Pittsburgh, for appellant.

Robert A. Arcovio, Pittsburgh, for appellee.

Before SPAETH, President Judge, and BROSKY and OLSZEWSKI, JJ.

BROSKY, Judge:

This appeal is from a declaratory judgment in a civil dispute over insurance coverage of an automobile accident when the automobile was set in motion by a three-year-old child. The parties are the insurer in an automobile policy, appellant, and the insurer in a homeowner's policy, appellee.

The court below held that the appellant as writer of the automobile policy was solely liable for coverage. We agree and, accordingly, affirm.

The relevant facts and procedural history were accurately summarized in the trial court opinion.

On March 19, 1976, Landis Robinson visited the home of Mr. and Mrs. Gilbert to sell insurance to them. She parked her car facing downhill in the street. Erin Gilbert, the daughter of the Gilbert couple, somehow obtained the keys to Robinson's car and put the car in motion. It traveled downhill and struck two children. Two separate suits were filed on behalf of the two injured children. In one case, the Gilberts were named as the original defendants, and in the other, they were joined as additional defendants. The liability was predicated on Erin's activity involving the setting of an automobile in motion. In the direct lawsuit, wherein the Gilberts were parties defendant, the allegations were that Erin drove the car.

In the other lawsuit, the negligence was predicated on the parents jointly and/or alternatively allowing their minor daughter to attempt to operate a motor vehicle and permitting the child to drive the automobile.

The Plaintiff, Erie Insurance Exchange, had issued an automobile policy to husband, Bobby G. Gilbert. The defendant, Transamerica, had issued a homeowners policy to both Gilberts as owners of their household. Both policies were in effect on March 19, 1976.

After the filing of the aforementioned lawsuits against the Gilberts, they were settled. Erie had appeared and defended and both carriers paid one-half of the settlement amount.

The above cross-declaratory judgment actions seek to establish sole liability of the other as mentioned before, seeking the entire cost of defense and the entire amount of settlement to be imposed on the other.

The pertinent portions of the policies are excerpted here. The automobile insurance policy, written by appellants provides:

I. Coverage A—Bodily Injury Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, ... caused by accident and arising out of the ownership, maintenance or use of the automobile.

The homeowner's policy, written by appellee, is the mirror image of the other:

This policy does not apply:

1. Under coverage E—Personal Liability ...

(a) to bodily injury or to property damage arising out of the ... operation, use ... of

(2) any motor vehicle ... operated by ... any insured....

Two questions, then, are presented in this appeal. First, given the circumstances of this accident, can the automobile policy be said to provide coverage? In other words, can a three-year-old child be said to "use" an automobile so as to come within the terms of the policy? Second, can a claim on the part of the victims of negligent entrustment by the parents of the automobile to the child be covered by a homeowner's policy which excludes coverage for events arising out of the operation or use of a motor vehicle? In other words, is that negligent entrustment tort claim essentially independent of the nature of what was entrusted?

Each of these two issues will be treated in turn.

*Can an automobile be used by a child?*

A. Out of state precedent.

Four of our sister states have considered the issue before us: does an insurance policy covering the "use" of a vehicle include the consequences of a young child setting the vehicle in motion?[1] Three of these cases—*Tucker, O'Brien*

---

1. *Bartels v. Romano,* 171 N.J.Super. 23, 407 A.2d 1248 (1979); *Tucker v. State Farm Mutual Automobile Ins. Co.,* 154 So.2d 226 (La.App.

and *Assurance*—concluded that there was no "use" of the automobile so as to invoke the policy's coverage. One case—*Bartels*—came to the contrary conclusion. However, an examination of the rationale of each of these two contrary lines fails to inspire an inclination in either direction.

*Bartels* applied a test laid down in an earlier case out of the Superior Court of New Jersey:

> The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected.

*Bartels,* supra, 171 N.J.Super. at 27, 407 A.2d at 1250, quoting *Westchester Fire Ins. Co. v. Continental Ins. Co.,* 126 N.J.Super. 29, 38, 312 A.2d 664, 669 (1973), aff'd o.b. 65 N.J. 152, 319 A.2d 732 (1974).

Quite obviously, difficulties would arise in applying this test to an actual situation. No doubt the Superior Court of New Jersey confronted just this difficulty for, without any further analysis, they make the following conclusory statement, disposing of the issue:

> Using the same criterion, the conclusion follows that the rolling of the automobile down the sloping driveway with the Romano children in occupancy was a consequence of the use of the automobile, and encompassed by the automobile policy coverage.

*Bartels,* supra, 171 N.J.Super. at 27, 407 A.2d at 1250.

The lack of predictability inherent in this approach is demonstrated by the fact that *Tucker,* using a nearly identical test, comes to the contrary conclusion.

> In determining whether the negligent act that caused a bodily injury arose out of the 'use' of a motor vehicle

1963); *State Farm Mutual Automobile Ins. Co. v. O'Brien,* 380 F.Supp. 1279 (D.Minn.1974); *Assurance Co. of America v. Bell,* 108 Ga.App. 766, 134 S.E.2d 540 (1963).

within the coverage of a motor vehicle liability policy, the court must consider whether it was a natural and reasonable incident or the consequence of the use of the vehicle for the purposes shown by the declaration, though not foreseen or expected.

*Tucker,* supra, at 228.

The remaining case uses a similar test—the intentions of the parties to the contract. " ... it is unreasonable to conclude that the parties to this insurance contract intended to insure the truck's use as the plaything of a six-year-old child." *O'Brien,* supra, at 1282. See also *Tucker,* supra, at 229. It is a highly dubious proposition, however, that insurance only covers those situations which the parties visualized at the time the contract was made. The history of the insurance industry is replete with bizarre situations, barely conceivable—much less actually in the consciousness of the parties—in which insurance protects the individual. Indeed, it is to guard against such unlikely and unthought of occurrences that insurance is, at least partially, purchased in the first instance.

[1] What was foreseen, contemplated or intended by the parties at the time the contract was entered into is a standard so vague and difficult of objective resolution that we must reject its application in the instant case.

\* \* \* \* \* \*

Another tack was also used in the three cases holding that there was no use. It is equally unprofitable.

"No reasonable purpose could have been accomplished by Ronald's 'driving' the truck when his mother was engaged in unloading cans full of water from the rear of the truck." *O'Brien,* supra, at 1282. If only reasonable purposes were the subject of insurance coverage, then all those activities negligently or recklessly engaged in by adults would be uninsurable. This is plainly not the case. It is against the consequences of our oversights and carelessness that we wish to be insured—not merely against those occurrences in which we are totally blameless victims.

In a similar vein, *Assurance* held that the releasing of the emergency brake by a three-year-old was not a use of the vehicle *qua* vehicle, but as a plaything. The results gainsay that. It was the effective use of the vehicle which, in fact, put it in motion. *O'Brien* states, quite perceptively, "It is, in fact, quite possible that Ronald intended, by childish fantasy or otherwise, to 'drive' the truck when the accident occurred." *O'Brien*, supra, at 1281. If, then, the child had the intent to operate the vehicle and succeeded in doing so, how is that to be meaningfully distinguished from the same intent and actions performed by an adult?

Finding little guidance in the cases on point, we will now examine general principles of insurance interpretation to determine if they are more helpful in the resolution of the issue before us.

B.. Principles of Interpretation.

The construction of a writing like the one at issue is, of course, a question of law over which this court need not defer to the lower court. See *Cowen v. Krasas*, 438 Pa. 171, 264 A.2d 628 (1970) and cases cited therein. In the course of such review, the standards to be applied are well established.[2]

First, the words included in the instrument must be given their ordinary meaning. *Pines Plaza Bowling, Inc. v. Rossview, Inc.*, 394 Pa. 124, 145 A.2d 672 (1958); *Masters v. Celina Mut. Ins. Co.*, 209 Pa.Super 111, 114–15, 224 A.2d

---

**2.** We note that *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983) has changed some of the interpretatory approach to insurance contracts. *Standard* held, "that where ... the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to reach the limitation or that he did not understand it." Id., 503 Pa. at 306, 469 A.2d at 567. That holding is not applicable to the instant case. The insured is not contending here that he failed to read the limitation or that he did not understand it; the contention is that it means something different from the insurer's interpretation. (Though the opposing party here is another insurance company, and not the insured, the arguments that are made as to interpretation are properly from the viewpoint of the insured.)

774, 776 (1966) (Montgomery, J.). Second, while ambiguous terms in an insurance policy should be construed against the insurer, *Nusbaum v. Hartford Fire Ins. Co.*, 276 Pa. 526, 529, 120 A. 481, 482 (1923), the court should not "torture" the language to create an ambiguity where none exists. *Bishop v. Washington*, 331 Pa.Super. 387, 397–98, 480 A.2d 1088, 1093 (1984). Third, a term will be held ambiguous only "if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." *Celley v. Mut. Benefit Health & Accident Ass'n.*, 229 Pa.Super. 475, 481–2, 324 A.2d 430, 434 (1974). Fourth, "The policy like every other contract, must be read in its entirety and the intent gathered from a consideration of the entire instrument." *Smith v. Cassida*, 403 Pa. 404, 408, 169 A.2d 539, 541 (1961). See also *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 372–73, 390 A.2d 736, 739 (1978). Finally, the "true intent ... is to be determined not only from its language, but from all the surrounding circumstances." *Twp. Mt. Lebanon v. Metropolitan Cas. Ins. Co. of N.Y.*, 106 Pa.Super. 209, 214, 161 A. 632, 633 (1932).

In looking at the provision in question in its entirety, and at its surrounding circumstances, as a reasonably intelligent person would, we do not find that the correct interpretation is apparent. In that ambiguities are to be construed against the insurer, this alone would justify an affirmance. That conclusion is bolstered after an examination of an analagous mode of interpretation—that adopted in Federal Trade Commission cases.

C. FTC Cases.

The federal case law starts from the same point as the law in Pennsylvania. "Advertisements must be considered in their entirety, and as they would be read by those to whom they appeal." *Aronberg v. Federal Trade Commission*, 132 F.2d 165 (7th Cir.1942). It is the application and amplification of this common principle by the federal courts that is instructive.

"The important criterion is the net impression which the advertisement is likely to make upon the general populace." *Charles of the Ritz Distributors Corp. v. Federal Trade Commission*, 143 F.2d 676, 679 (2nd Cir.1944). " ... we are not to look to technical interpretation of each phrase, but must look to the overall impression ... are likely to make on the buying public." *Murray Space Shoe Corp. v. Federal Trade Commission*, 304 F.2d 270, (2nd Cir.1962). "The language of the ordinary purchaser is ordinary and unaffected. He is not an 'expert in grammatical construction' or an 'educated analytical reader' and, therefore, he does not normally subject every word ... to careful study." Callman, Unfair Competition and Trademarks. § 19.2(a)(1), at 344 (1950) as quoted in *Federal Trade Commission v. Sterling Drug, Inc.*, 317 F.2d 669 (2nd Cir.1963). "The cardinal factor is the probable effect which the ... handi-work will have upon the eye and mind of the reader. *It is therefore necessary in these cases to consider the advertisement in its entirety and not to engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately.* " *Id.* (emphasis supplied). Advertisements are not intended "to be carefully dissected with a dictionary at hand, but rather to produce an impression upon" prospective purchasers. *Newton Tea & Spice Co. v. U.S.*, 288 F. 475, 479 (6th Cir.1923).

This follows from an elementary proposition, " 'impressions' are the primary targets of the ad-writers." *Stanley Laboratories v. Federal Trade Commission*, 138 F.2d 388, 392 (9th Cir.1943).

The interpretive scheme specifies how to accomplish the avoidance of hypertechnical construction. "In evaluating the tendency of language to deceive, the Commission should look not to the most sophisticated readers but rather to the least." *Exposition Press v. Federal Trade Commission*, 295 F.2d 869 (2nd Cir.1961). Similarly, the Seventh Circuit wrote in *Aronberg*, supra, at 167, "To an educated analytical reader, these and similar statements may not seem to claim anything more than to ... But the buying public

does not ordinarily carefully study or weigh each word...." Thus the vendor can be fairly held to have made a statement which was not, strictly speaking, actually made. "We think that there is merit in petitioner's contention that this and similar statements, when carefully scrutinized, may be thus construed. The weakness of this position, however, lies in the fact that such representations are made to the public, who, we assume, are not, as a whole, experts in grammatical construction. Their education in parsing a sentence has either been neglected or forgotten." *D.D.D. Corporation v. Fedl. Trade Commsn.*, 125 F.2d 679, 681 (7th Cir.1942).

The rationale for all of the foregoing is stated with the eloquence that comes from simplicity. "The law is not made for experts but to protect the public...." *Aronberg,* supra, at 167.

When the issue before us is placed in this matrix, its solution finally becomes apparent. How would the insured have looked at the contractual provisions in their entirety, and at their implications? Without engaging in hypertechnical and disputatious dissection of the terms, what was the intended impression created by the insurer in using the language in the contract which it framed? The answer to these questions is clear.

When the average insured purchases insurance covering the "repair, maintenance or use" of his vehicle he no doubt is under the impression—indeed is deliberately led to so believe—that he is "covered"; that he is economically protected from liability for occurrences having some real causal relationship with the vehicle.

Having created that impression as a marketing technique, the courts should not look with favor when that same party later seeks to split legal hairs in avoiding the application of that coverage to a situation simply because that situation is out of the ordinary run of type of accident.

■ We conclude, therefore, that the vehicle insurance policy does cover the instant situation.

*Can the negligent entrustment of an automobile be covered by homeowner's insurance?*

The precise issue for resolution, therefore, is whether an insurer, under a homeowner's policy of insurance, is required to provide a defense and coverage to an insured who is sued for alleged negligent entrustment of an automobile, in the face of a stated policy exception which excludes coverage for bodily injury claims arising out of the use of motor vehicles owned by the insured.

*Ins. Co. of North America v. Waterhouse*, 424 A.2d 675, 680 (Del.Super.1980).

A number of our sister states have considered this question. It has been answered both ways. Two different rationales have been used to arrive at a positive answer and one that resulted in a negative response.

A. Dovetailing.

This theory simply holds that any one occurrence can only be covered by either the automobile or the homeowner's policy—but not both. That mutually exclusive effect is the result of the exclusionary clause of the homeowner's policy acting as the mirror image of the inclusionary clause of the automobile policy. The two coverages dovetail, the one filling the gaps created by the other. Automobile-related occurrences are then within the sole province of the automobile policy. See *Westchester Fire Ins. Co. v. Continental Ins. Co.*, supra. The outcome of this rationale would be to exclude homeowner's policy coverage for negligent entrustment of an automobile. The dovetail approach, however, is not available to us. For reasons which need not delay us here, this court rejected that theory in *Eichelberger v. Warner*, 290 Pa.Super. 269, 276, 434 A.2d 747, 750 (1981): "Because of these canons of construction, it must be emphasized that a homeowner's policy and an automobile policy are not necessarily mutually exclusive."

B. Entrustment as Separate from the Use.

The two remaining ways of treating this issue both involve an analysis of the nature of the negligent entrust-

ment tort. One views the negligent entrustment of the automobile as being separate from the use of the vehicle, with the entrustment being the primary negligence, while the other sees the use as an integral part of the tort of negligent entrustment.

> INA argues that, regardless of the nature of the tort liability asserted against Dr. Waterhouse, if the incident which gave rise to liability emanated from the ownership or operation of a motor vehicle, coverage is excluded. To the contrary, Dr. Waterhouse contends that the negligent entrustment claim involves a judgmental tort, with the chattel involved merely an incidental circumstance of the tortious conduct.

*Waterhouse,* supra, 424 A.2d at 680.

It will be useful, before examining these treatments, to have a definition of the tort.

> Such a cause of action, although infrequently prosecuted, is not novel and sets forth a valid claim for relief predicated on the theory of common-law negligence. Although parents under the common law are generally not held liable in damages for the torts of their minor children solely because of that relationship, where the parents cause the tort to occur through their own negligence, they may be held liable for the damages. n3 Restatement, Torts 2d § 316 states:
>
> "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control." See, also, 2 Harper & James, Torts, p. 1056, where it states: "Where a parent has reason to know of a propensity for a particular type of dangerous conduct on the part of his minor child he is

bound to take reasonable steps (by discipline, training, or the like) to curb or guard against the propensity." *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 330, 204 N.W.2d 426, 428 (1973).

Nationally, the leading case holding that the homeowner's policy does cover situations like the one before us is *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 149–50, 519 P.2d 737, 741 (1974). The central portion of that opinion follows.

> It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms, (*Krug v. Millers' Mutual Insurance Ass'n.*, 209 Kan. 111, 495 P.2d 949.) In the homeowner's policy involved in this case the company agreed with the named insured to pay on behalf of the insured all sums which the insured should become legally liable to pay because of bodily injury and property damages. There is nothing in this broad insuring clause which restricts coverage to accidents or injuries occurring on the premises of the homeowner. In fact it is clear that the insuring clause covers a wide variety of accidents which might occur off the premises. Any escape from liability by Upland Mutual under its policy must be found in the special exclusion which has been set forth in full above. We have held that where an insurer attempts to avoid liability under an insurance policy on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified exception. (*Leiker v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 630, 396 P.2d 264).
>
> In this case the action filed by the Forresters against the Noels was not based upon the "ownership, maintenance, operation, use, loading or unloading of ... automobiles",

even though the immediate cause of the injury and death was Steven's operation of the automobile. The basis of the Forresters' action was the alleged negligence of the Noels in knowingly entrusting an automobile to a careless and reckless driver.

.    .    .    .    .

Nowhere is it alleged in the Forresters' petition that the Noels are liable on the theory that they owned, maintained, operated or used the automobile or that the automobile was negligently driven by the Noels or their agent. The theory of the Forresters' damage action is not directly related to the "ownership, maintenance, operation, use" of the vehicle.

The Tenth Circuit came to the same conclusion more succinctly.

The trial court, however, drew a distinction between tort liability arising out of the negligent use of the minibike and the liability of Mr. and/or Mrs. Douglass for the negligent act of entrusting their 10-year-old son with the minibike. It said: [The] gist of the action, the gravamen, if you will, is not the use of the motor vehicle, which arguably establishes a basis for these exclusions of the policy to become operative, but rather the gist or the gravamen of the tort is the failure to control and the failure to supervise what amounts to a dangerous instrumentality; and that is a ten-year-old child with a self-propelled vehicle or projectile such as this minibike.

*Douglass v. Hartford Ins. Co.*, 602 F.2d 934, 935–36 (10th Cir.1979).[3]

**3.** The Colorado Court of Appeals decided the issue the same way but on a slightly different ground. It held that the phrase "arising out of" the use of an automobile to be ambiguous and, therefore construed it against the insurer. *United Fire & Casualty Co. v. Day*, 657 P.2d 981 (Co.Crt.App.1982). Two other jurisdictions have also come to the conclusion that the homeowner's insurance is applicable to a situation of this type. *Lalomia v. Bankers & Shoppers Ins. Co.*, 35 A.D.2d 114, 312 N.Y.S.2d 1018 (190); *McDonald v. Home Ins. Co.*, 97 N.J.Super. 501, 235 A.2d 480 (1967).

Although this line of cases certainly is of arguable merit, the other line of cases should also be examined.

## C. Instrumentality.

The line of cases using this theory is numerous. One of the two leading expositions of this theory is found in *Waterhouse,* supra, 424 A.2d at 682.

Admittedly, the tort of negligent entrustment involves conduct which, in part, is distinct from the operation of the instrumentality which inflicts the harm. It is the negligent entrusting which creates the unreasonable risk, although the magnitude of the harm may depend upon the dangerous character of the product entrusted. See, Prosser, Law of Torts (4th Ed.) p. 678. It is not difficult to envision situations in which the type of instrumentality entrusted, (e.g., a gun or explosives), squares with the insurer's obligation to defend claims asserted against a parent-entrustor under a policy of general liability. But where the parties to a policy of general risk insurance agree to the specific exclusion of an instrumentality which, in operation and usage, is the predominant source of public liability claims, the focus changes. Regardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the chosen instrumentality—the automobile. It is this use which is specifically proscribed and, in the normal expectation of the parties to the insuring agreement, separately insured. While it is laudable to attempt an expansive reading of the policy in an effort to provide the insured with maximum coverage, the clear language of the exclusion cannot be tortured to achieve that result.

To similar effect is the oft-quoted case of *Cooter v. State Farm Fire and Casualty Co.,* 344 So.2d 496, 498 (Al.1977).

The fatal weakness of the appellants' contention for coverage lies in its failure to acknowledge one of the elements essential to recovery for negligent entrustment—the negligent operation of the motor vehicle....

The plain wording of the exclusionary provision reveals the deficiency in this rationale. While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by the one to whom it is entrusted is essential to recovery. It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee—that is missing in the rationale of those cases upholding coverage. Taken literally, this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability—the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept of negligent entrustment.

The courts of Michigan also note that:

"It could not be sensibly contended, for instance, that the entrusted driver, thus known to be unfit or incompetent, had started any chain of causation back to the entrustor if such entrusted driver, in the operation of the entrusted car, had himself committed no act or omission constituting actionable negligence."

*Perin v. Pueler*, (On Rehearing), 373 Mich. 531, 539, 130 N.W.2d 4, (1964) as quoted in *Michigan Mutl. Ins. Co. v. Sunstrum*, 111 Mich.App. 98, 104, 315 N.W.2d 154, 157 (1981).[4]

**4.** Other cases using this same approach are: *Lumbermen's Mutl. Cas. Co. v. Kosies*, 124 Ariz. 136, 602 P.2d 517 (1979); *Barnstable County Mutl. Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978); *Bankert v. Threshermen's Mutl. Ins. Co.*, 105 Wis.2d 438, 313 N.W.2d 854 (Crt.App.1981); *Fidelity & Guaranty Ins. Underwriters Inc. v. McManus*, 633 S.W.2d 787 (Tex.1982); *State Farm Fire and Casualty Co. v. McGlawn*, 84 Ill.App.3d 107, 404 N.E.2d 1122 (1980); *Aetna Cas. and Surety Co. v. American Manufacturers Mutl. Ins. Co.*, 261 Ark. 326, 547 S.W.2d 757 (1977); *Great Central Ins. Co. v. Roemmich*, 291 N.W.2d 772 (S.D.1980); *Gargano v. Liberty Mutual Ins. Co.*, 384 So.2d 220 (Dist.Crt.App.Fla.1980).

Cases adopting this instrumentality approach are both more numerous than the other line and reflect the trend, as they tend to be the more recent cases. We find this line of cases, rejecting coverage, to be more persuasive. This result is also consistent with our FTC-guided disposition of the first issue. Two of the cases cited above have language which supports this conclusion.

'[T]he test is not what the insurer intended its words to mean but what a reasonable person in the position of an insured would have understood the words to mean.' Id. The insured contracted for homeowner's insurance. It cannot be argued that they thought they were purchasing automobile liability coverage. We hold that, strictly construed or not, this exclusionary language removes negligent entrustment of an automobile operated away from the premises from the coverage of the policy.

*Bankert*, supra, 105 Wis.2d at 445, 313 N.W.2d at 857.

While the contemplation of the parties to a pre-printed contract of insurance is a nebulous concept and one usually invoked after a claim has arisen, it is a reasonable assumption that a purchaser of homeowner's insurance does not obtain such insurance to protect him from the ordinary risks inherent in the ownership or operation of an automobile.

*Waterhouse*, supra, 424 A.2d at 682.

■ We hold, therefore, that the homeowner's insurance policy does not give rise to coverage for the negligent entrustment of an automobile. Coupled with our earlier conclusion that the automobile policy did cover the child's use of the automobile, the result is that the trial court decided this case correctly.

Order affirmed.

SPAETH, President Judge, files a dissenting opinion.

SPAETH, President Judge, joined in this opinion before the expiration of his term on the court.

SPAETH, President Judge, dissenting:

I am unable to agree with the majority that a three year-old's act of placing an automobile in motion constitutes a "use" of the automobile by the child for which coverage is available under the automobile insurance policy. Rather, I am persuaded by the reasoning of *State Farm Mutual Automobile Insurance Co. v. O'Brien*, 380 F.Supp. 1279 (D.Minn.1974), and *Assurance Company of America v. Bell*, 108 Ga.App. 766, 134 S.E.2d 540 (1963). In declining to follow these cases, the majority, it seems to me, has violated the principles of interpretation it cites: it has not given "use" its "ordinary meaning," and it has " 'torture[d]' the language to create an ambiguity where none exists." Majority at 84–85. The FTC cases cited by the majority, *id.* at 85 *et seq.*, are inapplicable, I suggest. We are construing an insurance policy, not an advertisement. If we apply the FTC cases, however, and ask, as the majority does, "[W]hat was the intended impression created by the insurer[?]," *id.* at 86–87, still, the answer seems to me to be, "Not to cover what occurred here."

I am also unable to agree with the majority regarding the homeowner's policy. In my view, the policy does provide coverage. The exclusion quoted by the majority, *see* its op. at 81, does not apply for the same reason that the automobile insurance policy does not provide coverage: A three year-old cannot "use" an automobile. No argument having been made that any other exclusion applies, the conclusion follows that coverage is available. Since the exclusion does not apply, I do not reach the issue of negligent entrustment.

The order of the trial court should be reversed and an order entered requiring appellee, as the carrier on the homeowner's policy, to provide coverage.