## Sebastopol Coal Company v.
## The Northern Insurance Company
## of New York

*William A. Degillio, R. Carl Griffith,* and *Eugene F. Smith,* for plaintiffs.

*E. C. Marianelli,* and *O'Malley, Morgan, Bour & Gallagher,* for defendant.

SCHIFFMAN, J., February 11, 1964.—This matter comes before the court upon defendant insurance company's preliminary objections to plaintiff's amended complaint. The court permitted the late filing of the preliminary objections upon stipulation of the parties after the case was at issue. This was done in order that questions of law might be resolved prior to trial.

The instant case involves a suit by the plaintiffs coal company and finance company arising out of the involvement of a piece of equipment, identified as an International Tractor with a Drott Skid Shovel, in a fire which occurred at plaintiff coal company's place of business on March 13, 1960. The defendant insurance company had previously issued a policy of insurance thereon.

Plaintiffs allege in the first count of their amended complaint that the tractor involved was completely destroyed in the aforesaid fire. They claim there is, therefore, due from defendant the sum of $8,500, with interest. The amount demanded is represented as the value of the equipment at the time of loss.

Plaintiffs also claim in a second count of their amended complaint that defendant owes them the sum of $5,962.88, plus interest, for payments due the plain-

tiff finance company who financed the tractor and to whom that amount is owed. This claim is based upon an interuption of use endorsement upon the policy of insurance in question. The stated purpose of this endorsement is to provide reimbursement to plaintiffs for certain therein specified losses because of interruption of use of the equipment insured. The following provisions of the policy of insurance are involved:

"In the event any item of equipment listed in the schedule of this Policy is incapacitated for use as the direct result of any physical loss or damage thereto and insured against under this Policy, the Company will pay *an amount equal to said damaged item, prorated on a per diem basis, scheduled to become due and which actually fall due* to the Financial Institution or Distributor under the finance instruments executed by the Purchaser prior to the date of such *physical loss* or damage; commencing from the date of the occurrence of the physical loss or damage making impossible the continued operation of the damaged item, and ending on the date when:

"(a) The item of equipment is, or with exercise of due diligence could be, restored to operating condition at the site where the damage occurred; or

"(b) The Company provides substitute equipment to the Purchaser at the site where the damage occurred, it being a requirement that the Purchaser accept such equipment when so offered; or

"(c) The Company tenders to any of the loss payees named in this policy its draft in the amount equal to its liability under this Policy for a total loss of the said item of equipment; whichever shall first take place." (Italics supplied.)

Plaintiffs contend that their equipment was completely destroyed so as to involve a total loss thereof. They further contend that defendant has not complied with any of the aforementioned conditions in the

policy so as to relieve defendant from paying an amount equal to the installments which have fallen due. It is averred, therefore, that defendant's obligation to make the installment payments was never terminated.

Defendant contends the equipment was not totally destroyed, but, rather, only damaged and could have been repaired within five months from the date of the fire. Defendant, therefore, maintains it is liable only for the cost of repairs estimated to be $3,750, and the payment of the maximum sum of $745.36 to the plaintiff finance company for the installments which would have fallen due within five months of the date of the fire.[1]

The extent of the loss or damage to the equipment is a question of fact to be decided by a jury. However, defendant's preliminary objections raise the question of law with regard to an interpretation of the above-quoted provision of the policy.

The preliminary objections are stated as follows:

The first preliminary objection is in the nature of a demurrer and sets forth the following reasons for the request:

"1. The claim in the Second Count of the Complaint is based entirely on the Interruption of Use Endorsement attached to the policy.

"2. The Complaint alleges the tractor was totally destroyed by the fire and claims the alleged full value of the tractor or $8,500.00.

"3. As the Complaint alleges a total loss and claims the full alleged value of the tractor, the Interruption of Use Endorsement does not apply. The Interruption of Use Endorsement applies only where there is a partial loss."

The second preliminary objection is in the form of

---

[1] Pursuant to the installment finance contract existing between plaintiff coal company and plaintiff finance company.

a demand for a more specific complaint and sets forth the following reasons for the request for that relief:

"1. The Interruption of Use Endorsement provides:

"the Company will pay an amount equal to that part of the installment payments . . . scheduled to become due and which actually fall due to the Financial Institution or Distributor under the finance instruments executed by the Purchaser . . . : commencing from the date . . . of the physical loss or damage making impossible the continued operation of the damaged item, and ending on the date when:

"(a) the item of equipment is, or with the exercise of due diligence could be, restored to operating condition at the site where the damage occurred; or

"(b) the Company provides substitute equipment to the Purchaser at the site where the damage occurred, it being a requirement that the Purchaser accept such equipment when so offered: or

"(c) the Company tenders to any of the loss payees named in this Policy its draft in an amount equal to its liability under this Policy for a total loss of the said item of equipment; whichever shall first take place.

"2. Therefore, installments due under the Interruption of Use endorsement could not exceed the total amount of the installments which became due after the fire and within the period in which the tractor with the exercise of due diligence could have been restored or repaired.

"3. The Complaint does not allege the period in which the tractor with due diligence could have been restored or repaired but merely claims the balance due as of the date of the fire including installments not due for as long as about two years after the fire."

The preliminary objections raise essentially two basic matters which merit our separate consideration.

The first proposition is whether or not, under the policy of insurance issued by defendant, plaintiffs are entitled to recover the entire value of the equipment because of its alleged total destruction and, in addition, recover an amount for interruption of use of the equipment equal to the total number of payments due the finance company.

The second question propounded is whether or not the court should grant defendant's request to further amend the amended complaint by including an allegation of the length of time required to obtain another tractor. Defendant submits even if they are bound to pay the value of the equipment and the installments due on the finance contract, the obligation exists only for such period of time as would be needed to restore or replace the equipment.

We are confronted by two opposing constructions submitted by the parties. Plaintiffs urge that, in addition to fire loss coverage for total destruction, they are entitled to recover the total number of payments due the finance company under the "Interruption of Use Endorsement". Defendant contends that such recovery defeats the very purpose of the policy to indemnify. They submit the terms of the endorsement are applicable only to a partial and not total loss.

Under the main provisions of the policy, defendant agreed to provide for the cost of replacing or repairing of the insured item. In addition, they agreed in the separate endorsement to the policy to pay a sum equal to the amount of the installment payments falling due until the occurrence of one of three events.

The very clear and explicit terms of the insurance contract itself indicate defendant's obligation to reimburse plaintiffs for "loss of use",[2] which may be

---

[2] As determined by reference to the amount of the installment payments falling due.

terminated by the happening of one of three expressed conditions, "whichever shall first take place."

The defendant insurance company has undertaken to pay the insured not only for the loss or destruction of its equipment, but also for any loss occasioned by the interruption of plaintiffs' use of the item of equipment. The amount of such payment is to be determined by reference to the installment payments falling due according to the schedule contained in the policy during such interruption.

When words in a policy of insurance admit of two meanings, that which gives effect to the design of the parties is preferred to the one that destroys it. We conclude the contractual intent was to insure more than the basic fire loss.

This conclusion is fortified, because the words employed, construed in their natural, plain, obvious and ordinary significance, denote an intent to secure a protective type of coverage due to interruption of use as well as that for the basic loss.

If the meaning and intent of the words used in the policy are unclear or obscure, such doubt or ambiguity must be resolved in favor of the insured since it was the insurer who wrote the contract: Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 587.

The hazards or perils insured against are a matter of contract between the parties and may be whatever the insured and the insurer agree upon unless contrary to law or public policy. The nature of the contract here is not unique. There are many instances of contracts which insure not only loss or damage to a piece of property but which also provide that sums of money shall be paid for loss of profits, rents, fixed charges, and other continuing expenses. See Nusbaum v. Hartford Fire Ins. Co., 276 Pa. 526. See also Annotation in 83 A. L. R. 2d 885.

Should it be ultimately determined as a matter of fact that the equipment could have been repaired, defendant's liability would then be limited. Such limitation would include the actual cost of such repair, plus an amount equal to the installment payments which would have fallen due during the time that such repairs might reasonably have been effected.

If, however, a trier of fact should determine the equipment cannot be repaired and that it has been totally destroyed, then defendant would be liable for its full value as of the date of the loss *plus* an amount equal to the total installment payments which fell due under the terms of the instant contract of insurance.

Defendant's request to have plaintiffs further amend by alleging the length of time required to obtain other equipment must be denied. Such pleading is not germane to the relief sought by plaintiffs which is predicated on complete destruction and total loss of the equipment.

If the total destruction can be established as a matter of fact, then, under the terms of the contract of insurance, the burden is upon defendant to terminate its continuing liability for interruption of use by providing a substitute piece of equipment or by tendering the full value of the loss. Nothing appears anywhere in the contract which would compel plaintiffs to substitute another piece of equipment.

There is no reason to require that plaintiffs allege the time it would take to provide a substitute. If this period of time is, or should become, significant, defendant is certainly free to plead it as a matter of defense, and, in fact, has done so in this case.

Accordingly, we enter the following

ORDER

Now, February 11, 1964, at 10 a.m. (EDT), defendant's preliminary objections are hereby dismissed.